RAILROAD COMMISSION OF TEXAS and Greg Abbott in His Official Capacity as Attorney General for the State of Texas, Petitioners,

v.

WBD OIL & GAS CO. and WBD Oil & Gas Co., Inc., Respondents.

No. 01–0177.

Supreme Court of Texas.

Argued Jan. 9, 2002.

Decided Feb. 13, 2003.

Rehearing Denied June 5, 2003.

Jamie Nielson, Austin, Ronald C. Schultz, Dubai, Howard G. Baldwin, First Assistant Attorney General, Jeffrey S. Boyd, Office of the Attorney General, Austin, for petitioners.

Philip F. Patman, Ana Marie Marsland–Griffith, Patman & Osborn, Austin, Rick A. Mayer, The Woodlands, for Anadarko Petroleum Corp.

Don Walker, Asst. Atty. Gen., for the Railroad Commission.

James Douglas Ray, Charles E. Hampton, Michael P. Marcin, Gammage, Hampton, Marcin & Ray, Travis Phillips, The Law Offices of Travis R. Phillips, Austin,

Robert A. Gammage, Hill Gilstrap, PC, Arlington, for respondents.

Justice HECHT delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice OWEN, Justice O'NEILL, Justice JEFFERSON, Justice SCHNEIDER, and Justice SMITH joined.

To regulate oil and gas production, the Railroad Commission of Texas has adopted general rules applicable throughout the State,[1] but because these general rules cannot adequately address the widely varying conditions found in the thousands of oil and gas reservoirs in Texas, the Commission may issue orders with detailed regulations for a specific field, which the Commission calls field rules. In determining field rules, the Commission has historically followed the procedures used for adjudication rather than for rulemaking. Under the Administrative Procedure Act,[2] judicial review of adjudicated decisions is more limited in timing and scope than judicial review of rules. The question before us is whether field rules are subject to review as rules. The trial court thought not, but a divided court of appeals disagreed.[3] We agree with the trial court and consequently reverse and remand the case to the court of appeals for further proceedings.

**I**

The discovery gas well in the Panhandle Field—the Canadian River Gas Company Masterson No. 1 well in Potter County—

was completed in 1918 to little delight because there was then, and for many years afterward, no significant market for gas. On the other hand, the 1921 completion of the discovery oil well in the field—the Gulf Production Company S.B. Burnett No. 2 well in Carson County—set off massive drilling and production throughout the area. It was customary at the time for oil wells to be completed and the casing perforated both in lower oil horizons and higher gas horizons so that gas and oil were produced together. The so-called "wet" or casinghead gas from the well was processed to remove whatever liquid condensate or "natural gasoline" could be extracted under pressure, and the remaining "dry" gas—some 90% of the volume—was vented or flared. The gas lost by this lamentable practice could reach, by one 1934 estimate, 1 billion cubic feet per day. In 1935, the Legislature prohibited such wasteful operations.[4] About the same time, the Commission began issuing a series of orders adopting field rules to regulate the production of oil and gas in the Panhandle Field, and specifically, to prohibit perforating oil well casing in higher gas strata so as to produce gas and oil together.

By 1986, the Panhandle Field had been divided into thirteen separately designated fields (several simply on county lines) together containing 10,796 producing oil wells and 3,510 producing gas wells. From information the Commission had obtained and from operators' requests for clarification of the field rules, the Commis-

1. *See* 16 TEX. ADMIN. CODE ch. 3 (2002).

2. TEX. GOV'T CODE §§ 2001.001–.902.

3. 35 S.W.3d 34 (Tex.App.-Austin 1999).

4. Act of April 30, 1935, 44th Leg., R.S., ch. 120, § 1, 1935 Tex. Gen. Laws 318, 318–319 ("Declaration of policy: In recognition of past, present, and imminent evils occurring in

the production and use of natural gas, as a result of waste in the production and use thereof in the absence of correlative opportunities of owners of gas in a common reservoir to produce and use the same, this law in enacted for the protection of public and private interests against such evils by prohibiting waste and compelling ratable production.").

sion had grown concerned about persisting "high-perforation" practices[5] as well as the adequacy of the field rules in other respects. Accordingly, in January 1986 the Commission initiated Docket No. 10–87,017 by notifying all operators in the Panhandle Fields, as well as all other interested persons and the public, that it would hold a hearing to consider consolidating the fields and changing the field rules. The Commission's notice set out possible changes in the rules but warned that it would adopt "such rules, regulations, and orders as in its judgment the evidence presented may justify and such rules, regulations and orders may differ from those specifically proposed or mentioned in this notice." Operators were "urged to present data and opinions" and admonished to conduct any necessary discovery diligently. The notice scheduled a prehearing conference for the purpose of organizing the participants and determining when and how the trial-type hearing would be conducted. The hearing began in January 1987, and in March 1989 the Commission issued its final order, adopting findings and conclusions and changing the field rules. In part, the new rules changed completion requirements, well spacing, and allowable production. Several parties sought review of the order in district court, but that case was dismissed in January 1990.[6]

The notice, hearing, order, and appeal were in all respects typical of the adjudicative—what the APA calls "contested case"—procedures the Commission has long followed in determining field rules.[7] Such proceedings can be initiated by an operator or by the Commission.[8] Notice is given, usually by mail, to all operators in the field and other persons whose rights could be affected. Persons with a "justiciable or administratively cognizable interest" may intervene.[9] The hearing is conducted like a trial, with witnesses giving sworn testimony subject to cross-examination and a verbatim record kept.[10] According to the Commission, the evidence regarding the nature of a particular reservoir and the production from it is often very technical and complex. The hearing results in an order detailing regulations applicable to the specific area, which may differ from statewide regulations. Parties can seek judicial review as with any contested case decision. Persons affected by field rules may seek exceptions from the Commission based on individual circumstances, and of course when situations in a field change, the Commission may revisit the field rules as it did here.

WBD Oil & Gas Co. and WBD Oil & Gas Co., Inc. (together, "WBD") have forty marginal oil wells and one gas well in the Panhandle Fields and therefore received the Commission's notice of Docket No. 10–87,017, but decided not to participate in the hearing. WBD also received a copy of the Commission's final order but did not attempt to join in the appeal to the district court. In June 1995, however, WBD sued the Commission, challenging the validity

---

5. *See also Amarillo Oil Co. v. Energy–Agri Prods., Inc.*, 794 S.W.2d 20, 27 n. 6 (Tex.1990) (observing that "[o]il operators have been shooting perforations in the well casings into the gas formations, higher up the hole").

6. *Texaco, Inc. v. Railroad Comm'n*, No. 465,-642 (Consolidated) (53rd Dist. Ct., Travis County, Tex., Jan. 26, 1990).

7. *See* Joe Greenhill & Robert C. McGinnis, *Practice and Procedure in Oil and Gas Hearings in Texas*, 18 Sw. L.J. 406, 407–408 (1964).

8. 3 ERNEST E. SMITH & JACQUELINE LANG WEAVER, TEXAS LAW OF OIL AND GAS § 15.3, at 214 (1997).

9. *See* 16 TEX. ADMIN. CODE § 1.64(a) (2002).

10. SMITH, *supra* note 8, § 15.3, at 214.

and applicability of the 1989 field rules. WBD complained that the Commission should not be permitted to change completion requirements for existing wells. In essence, WBD asserted that the Commission had, in WBD's words, "deprived them of property without due process, and unconstitutionally interfered with vested rights through an impermissible retroactive application of agency rules or orders that were adopted in a contested case proceeding in which WBD was not a party." WBD alleged violations of several provisions of the state and federal constitutions. As grounds for the trial court's jurisdiction, WBD asserted section 2001.038 of the APA,[11] the Uniform Declaratory Judgments Act,[12] section 85.241 of the Texas Natural Resources Code, section 1983 of title 42 of the United States Code, the Texas Constitution, and the United States Constitution. The Commission filed a plea to the jurisdiction, arguing that WBD was improperly attempting to circumvent the APA's requirements for obtaining judicial review of a Commission order. Several operators intervened in support of the Commission's position.[13] The trial court sustained the Commission's plea and dismissed the case.

A divided court of appeals reversed,[14] holding that the trial court had jurisdiction under section 2001.038(a) of the APA, which states:

> The validity or applicability of a rule ... may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.[15]

The APA defines "rule" as "a state agency statement of general applicability that ... implements, interprets, or prescribes law or policy...."[16] A field rule, the court concluded, fits this definition: it is clearly a state agency statement that prescribes law or policy, and it is generally applicable, though not statewide, because it applies to an open class of persons rather than specific individuals, is prospective, and affects individual rights only in subsequent enforcement proceedings.[17] The court rejected the argument that because field rules are determined using contested case procedures, they are contested case decisions that may be appealed under APA sections 2001.171–.202 and not rules that may be challenged in a declaratory judgment action under section 2001.038.[18] The court reasoned that the nature of neither the Commission proceeding nor its decision is dictated by the procedures followed, regardless of whether those procedures are mandated by law or are within the Commission's discretion[19]—in other words, a rule is a rule, whether it is the product of an informational notice-and-comment rulemaking hearing or an adversarial trial-type contested case hearing. Besides, the court explained, field rules are not adjudications because their determination is inherently legislative rather

11. Tex. Gov't Code § 2001.038.

12. Tex Civ. Prac. & Rem.Code §§ 37.001–.011.

13. Anadarko Petroleum Corp.; MidCon Gas Services Corp.; Natural Gas Pipeline Company of America; Midgard Energy Company; and Conoco Inc.

14. 35 S.W.3d 34.

15. Tex. Govt.Code § 2001.038(a).

16. *Id.* § 2001.003(6).

17. 35 S.W.3d at 40–43.

18. *Id.* at 43–46.

19. *Id.*

than adjudicative,[20] and therefore the proceeding to determine them is not a contested case, defined by the APA to be "a proceeding ... in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing."[21] Thus, the court concluded, the trial court had jurisdiction of WBD's claims under section 2001.038. Those claims, the court stated, were a direct attack on the field rules rather than an impermissible collateral attack [22] and were not within the Commission's primary jurisdiction.[23] "We can think of no reason," the court said, "why the legislature would have wanted rules adopted [with contested case] procedures to be immune from challenge under APA § 2001.038."[24] Having reached this conclusion, the court did not consider WBD's other jurisdictional arguments.

In dissent, Justice Powers argued that the court's "abstract and lexical"[25] construction of the APA's definition of "rule" was so broad as to include every generally applicable statement of policy an agency might make, however informally, subjecting all such statements not only to unlimited attack in judicial proceedings but also to all of the APA's procedural requirements for rulemaking, resulting in "absurd and paralyzing consequences".[26] The court's analysis, he noted, could not be limited to the adoption of field rules or even to all Railroad Commission proceedings; as a construction of the APA, it applied with equal force to all agency proceedings. Beyond these pragmatic difficulties, Justice Powers argued, the court's holding ignored the APA's fundamental, functional, procedural dichotomy between rulemaking and contested case decisionmaking and the judicial review appropriate for each. " 'A rule,' " he contended, quoting Professor Davis's commentary on administrative law, " *is the product of rulemaking,* and rulemaking is the part of the administrative process that resembles a legislature's enactment of a statute.' "[27] In Justice Powers' view, the nature of the proceeding determines whether a decision is a rule. The APA's definition of "rule" in general terms, Justice Powers argued, is meant to discourage agencies from attempting to circumvent the Act's notice-and-comment procedures when they should apply, not to mandate their application universally.[28] The contested case procedures the Commission used to determine field rules, Justice Powers observed, not only provided interested persons with adequate process but guaranteed due process when rulemaking procedures would not.[29] Accordingly, he concluded, the appropriate judicial review of field rules was by appeal as with other contested case decisions, not by declaratory judgment action allowed for rules challenges.

On rehearing, Justice Kidd added a brief concurring opinion attempting to "harmonize" the court's opinion and Justice Powers' dissent. In Justice Kidd's view, "[t]he Railroad Commission, in propounding field rules, employs a hybrid procedure which

**20.** *Id.* at 43–45.

**21.** Tex. Gov't Code § 2001.003(1).

**22.** 35 S.W.3d at 46.

**23.** *Id.* at 46–47.

**24.** *Id.* at 45.

**25.** *Id.* at 49 (Powers, J., dissenting).

**26.** *Id.* at 52.

**27.** *Id.* at 51 (quoting Kenneth Culp Davis, Administrative Law § 5.01, at 123 (1972)) (emphasis added in opinion).

**28.** *Id.* at 50–51.

**29.** *Id.* at 52.

blends both legislative rulemaking and contested-case procedures into one docket."[30] In this circumstance, which he regarded as entirely unique, field rules could be challenged under section 2001.038.[31]

The Commission and two intervenors in the trial court[32] petitioned for review. They and several amici curiae[33] argue that the court of appeals' decision opens long-settled field rules to new attacks and poses a serious threat to the process the Commission has used for decades to determine field rules. In addition, the Public Utilities Commission as amicus curiae has expressed concern that the court of appeals' construction of the APA will adversely affect it and other agencies. We granted the petitions for review to address these issues.[34]

## II

■ We are not concerned here with whether the Commission's long-standing practice of determining field rules using contested case procedures rather than rulemaking procedures is an appropriate exercise of the discretion that we have said it possesses generally to choose between the two.[35] The court of appeals indicated,[36] and WBD concedes, that the use of contested case procedures is proper and

maybe even necessary to fully protect the rights of everyone affected. The issue we have to decide is whether field rules, having been determined under contested case procedures, may nevertheless be judicially reviewed as rules under section 2001.038 of the APA rather than as contested case decisions. The issue is not, of course, merely one of nomenclature; denominating reservoir-specific regulations "field *rules* ", as opposed to "field regulations" or "field orders", does not make them "rules" within the meaning of the APA. Use of the term "field rules" predates the APA's first predecessor in 1975[37] by decades. Nor do we think that the issue can be resolved by focusing on a single provision of the APA—its definition of "rule"—to the distortion of the Act as a whole. Accordingly, we begin with an overview of the APA's provisions to set the context in which individual provisions must be construed.

The APA provides two modes of judicial review—one for contested case decisions and the other for rules—that are significantly different. Judicial review of contested case decisions is far more limited. To obtain such review, an aggrieved person must move for rehearing (except in certain cases),[38] must have exhausted all other administrative remedies available,[39]

**30.** *Id.* at 48 (Kidd, J., concurring).

**31.** *Id.*

**32.** Conoco, Inc. and Anadarko Petroleum Corp.

**33.** Coghlan, Crowson, Fitzpatrick, Westbrook & Worthington; Goldston Oil Corp.; Phillips Petroleum Co.; Pioneer Natural Resources USA, Inc.; Scott, Douglass & McConnico; Texas Oil & Gas Association.

**34.** 44 Tex. Sup.Ct. J. 1170 (Sept. 20, 2001).

**35.** *See Railroad Comm'n v. Lone Star Gas,* 844 S.W.2d 679, 689 (Tex.1992) (observing that the Commission may exercise "informed dis-

cretion" in deciding to promulgate rules rather than determine issues in contested cases).

**36.** 35 S.W.3d at 45.

**37.** Act of April 8, 1975, 64th Leg., R.S., ch. 61, 1975 Tex. Gen. Laws 136.

**38.** Tex. Gov't Code § 2001.145(a) ("A timely motion for rehearing is a prerequisite to an appeal in a contested case except that a motion for rehearing of a decision or order that is final under Section 2001.144(a)(3) [involving imminent peril to the public health, safety, or welfare] or (4) [by agreement of the parties] is not a prerequisite for appeal.").

**39.** *Id.* § 2001.171 ("A person who has exhausted all administrative remedies available within a state agency and who is aggrieved by

and must file a petition with the court within thirty days of the decision.[40] A person seeking judicial review of a rule need not do any of these things. The only time limitation on judicial review of a rule is that a proceeding to contest compliance with certain procedural requirements must be initiated within two years of the rule's effective date.[41] Otherwise, judicial review of a rule may be sought at any time. The scope of review of a contested case decision varies from statute to statute;[42] sometimes a court must try the issue de novo,[43] but far more often it is limited to determining whether the agency decision was supported by substantial evidence.[44] The APA does not restrict the scope of judicial review of rules but says only:

> The validity or applicability of a rule ... may be determined in an action for de-

claratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.[45]

No standard of review is prescribed. The statute adds that plaintiff need not have challenged the rule before the agency.[46] Judicial review of rules is thus largely unlimited in time and scope.

The differences in these two modes of judicial review do not derive from distinctions between decisions *qua* decisions and rules *qua* rules unrelated to the procedures that produce them. Both decisions and rules have the force of law, and while it may often be true that a contested case decision affects only the relatively few parties actually involved in the case while a

a final decision in a contested case is entitled to judicial review under this chapter.").

40. *Id.* § 2001.176(a) ("A person initiates judicial review in a contested case by filing a petition not later than the 30th day after the date on which the decision that is the subject of complaint is final and appealable.").

41. *Id.* § 2001.035(b) ("A person must initiate a proceeding to contest a rule on the ground of noncompliance with the procedural requirements of [specified sections] not later than the second anniversary of the effective date of the rule.").

42. *Id.* § 2001.172 ("The scope of judicial review of a state agency decision in a contested case is as provided by the law under which review is sought.").

43. *Id.* § 2001.173(a) ("If the manner of review authorized by law for the decision in a contested case that is the subject of complaint *is by trial de novo, the reviewing court shall* try each issue of fact and law in the manner that applies to other civil suits in this state as though there had not been an intervening agency action or decision but may not admit in evidence the fact of prior state agency action or the nature of that action except to the limited extent necessary to show compliance with statutory provisions that vest jurisdiction in the court.").

44. *Id.* § 2001.174 ("If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but: (1) may affirm the agency decision in whole or in part; and (2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (A) in violation of a constitutional or statutory provision; (B) in excess of the agency's statutory authority; (C) made through unlawful procedure; (D) affected by other error of law; (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.").

45. *Id.* § 2001.038(a).

46. *Id.* § 2001.038(d) ("A court may render a declaratory judgment without regard to whether the plaintiff requested the state agency to rule on the validity or applicability of the rule in question.").

rule may have a much broader effect, that is not necessarily so. Some cases, like this one, affect a large number of persons, more than some rules. Moreover, to the extent that a contested case decision has precedential value for similar cases, its effect may be similar to a rule's. The proper mode of judicial review is simply not based on the number of persons affected.

But different methods of judicial review can be justified by the profound procedural differences between contested case proceedings and rulemaking proceedings. In rulemaking proceedings:

- notice of a proposed rule must be published in the Texas Register; [47]
- the agency must "give all interested persons a reasonable opportunity to submit data, views, or arguments, orally or in writing"; [48]
- interested persons are not entitled to compel evidence or take discovery;
- the agency need not conduct a hearing unless requested by at least twenty-five persons, an association with at least twenty-five members, or the government; [49]
- no rules of evidence apply;
- persons supplying information need not testify under oath;
- interested persons are not entitled to cross-examination;
- the agency may consult informally with interested persons and appoint a committee of experts to provide advice; [50]
- a proposed rule must be reviewed by a committee in each House of the Legislature; [51]
- the agency, if requested, must give "a concise statement of the principal reasons for and against" the adoption of the rule; [52] and
- there is no record of the proceedings.

By contrast, in a contested case:

- notice must be given to each party; [53]
- only parties are entitled to present evidence and argument; [54]

47. *Id.* § 2001.023(b) ("A state agency shall file notice of the proposed rule with the secretary of state for publication in the Texas Register in the manner prescribed by Chapter 2002.").

48. *Id.* § 2001.029(a).

49. *Id.* § 2001.029(b) ("A state agency shall grant an opportunity for a public hearing before it adopts a substantive rule if a public hearing is requested by: (1) at least 25 persons; (2) a governmental subdivision or agency; or (3) an association having at least 25 members.").

50. *Id.* § 2001.031(a)-(b)("(a) A state agency may use an informal conference or consultation to obtain the opinions and advice of interested persons about contemplated rulemaking. (b) A state agency may appoint committees of experts or interested persons or representatives of the public to advise the agency about contemplated rulemaking.").

51. *Id.* § 2001.032 ("Each house of the legislature by rule shall establish a process under which the presiding officer of each house refers each proposed state agency rule to the appropriate standing committee for review before the rule is adopted....").

52. *Id.* § 2001.030 ("On adoption of a rule, a state agency, if requested to do so by an interested person either before adoption or not later than the 30th day after the date of adoption, shall issue a concise statement of the principal reasons for and against its adoption. The agency shall include in the statement its reasons for overruling the considerations urged against adoption.").

53. *Id.* § 2001.051 ("In a contested case, each party is entitled to an opportunity: (1) for hearing after reasonable notice of not less than 10 days; and (2) to respond and to present evidence and argument on each issue involved in the case.").

54. *Id.*

- the agency and parties may subpoena evidence and take discovery;[55]
- each party is entitled to an opportunity for hearing;[56]
- the rules of evidence apply generally;[57]
- witnesses are sworn;[58]
- parties are entitled to cross-examination;[59]
- the agency may generally not engage in ex parte consultations;[60]
- a proposed decision is not reviewable by the Legislature;

- the agency must make findings of fact and conclusions of law, whether requested or not;[61] and
- a record must be made of the proceedings.[62]

Plainly, rulemaking procedures maximize "public participation in the rulemaking process," a stated purpose of the APA,[63] while contested case procedures limit participation to those directly affected by the dispute. It makes perfect sense to allow less restricted judicial review of rules. It

55. *Id.* §§ 2001.089–.103.

56. *Id.* § 2001.051.

57. *Id.* § 2001.081 ("The rules of evidence as applied in a nonjury civil case in a district court of this state shall apply to a contested case except that evidence inadmissible under those rules may be admitted if the evidence is: (1) necessary to ascertain facts not reasonably susceptible of proof under those rules; (2) not precluded by statute; and (3) of a type on which a reasonably prudent person commonly relies in the conduct of the person's affairs.").

58. *Id.* § 2001.088 ("A state agency may swear witnesses and take their testimony under oath in connection with a contested case held under this chapter.").

59. *Id.* § 2001.087 ("In a contested case, a party may conduct cross-examination required for a full and true disclosure of the facts.").

60. *Id.* § 2001.061("(a) Unless required for the disposition of an ex parte matter authorized by law, a member or employee of a state agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case may not directly or indirectly communicate in connection with an issue of fact or law with a state agency, person, party, or a representative of those entities, except on notice and opportunity for each party to participate. (b) A state agency member may communicate ex parte with another member of the agency unless prohibited by other law. (c) Under Section 2001.090, a member or employee of a state agency assigned to render a decision or to make find-

ings of fact and conclusions of law in a contested case may communicate ex parte with an agency employee who has not participated in a hearing in the case for the purpose of using the special skills or knowledge of the agency and its staff in evaluating the evidence.")

61. *Id.* § 2001.141("(a) A decision or order that may become final under Section 2001.144 that is adverse to a party in a contested case must be in writing or stated in the record. (b) A decision that may become final under Section 2001.144 must include findings of fact and conclusions of law, separately stated. (c) Findings of fact may be based only on the evidence and on matters that are officially noticed. (d) Findings of fact, if set forth in statutory language, must be accompanied by a concise and explicit statement of the underlying facts supporting the findings. (e) If a party submits under a state agency rule proposed findings of fact, the decision shall include a ruling on each proposed finding.").

62. *Id.* § 2001.060 ("The record in a contested case includes: (1) each pleading, motion, and intermediate ruling; (2) evidence received or considered; (3) a statement of matters officially noticed; (4) questions and offers of proof, objections, and rulings on them; (5) proposed findings and exceptions; (6) each decision, opinion, or report by the officer presiding at the hearing; and (7) all staff memoranda or data submitted to or considered by the hearing officer or members of the agency who are involved in making the decision.").

63. *Id.* § 2001.001(2).

may well be that the effect of a rule cannot be fully appreciated except as time passes. To require review to be initiated within thirty days, or any comparably short time period, would impair the utility of rules by forcing on them a permanence they do not deserve. For contested cases, the situation is exactly opposite. Once an agency has resolved the disputes among persons directly involved in a contested case, they have every reason to expect that any further challenge will follow immediately and after that the decision will stand. To offer litigants no assurance of finality in the circumstances presented is to make the dispute-resolution process meaningless to them.

The court of appeals suggested that determining field rules is a hybrid process,[64] but this cannot be true. Contested case procedures and rulemaking procedures are mutually exclusive: a rule cannot be adopted without public input, and a contested case cannot be decided with it. A person is entitled to provide rulemakers with data or opinions without being placed under oath; a person cannot testify in a contested case except under oath. Parties to a contested case are entitled to a decision based on the evidence in the record; there is no record in a rulemaking proceeding. An agency proceeding to determine field rules that bind persons who receive notice but do not actually appear and participate is no less adjudicative than is a class action in court. In both instances, all those whose rights will be affected must be given notice. In a rulemaking proceeding, blanket notice must be given to the public at large. Contested case procedures and rulemaking procedures

simply cannot be mixed in one hybrid proceeding.

WBD argues, and the court of appeals held, that the Commission's hearing on the Panhandle Field rules was not a contested case as defined by the APA. We disagree. The APA defines a contested case as "a proceeding ... in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing."[65] WBD argues, as the court of appeals did,[66] that the Panhandle Field rules hearing was not adjudicative because individual rights were not determined, but this argument contradicts WBD's basic complaint in this case, which is that its own rights have been altered by the decision in a proceeding in which it did not participate. Contested case procedures were used, including giving notice to all operators, so that production rights in the field could be determined. Like a judgment in a class action, the Commission's decision adjudicated the rights of those who chose to participate in the proceeding and all others similarly situated—that is, other operators in the Panhandle Fields. The court of appeals reasoned that the Panhandle Field rules were not "concretely operative" against any individual until the initiation of enforcement proceedings,[67] but under that view only the rights of violators would ever be determined. Certainly, the law is more "concretely operative" when one is standing in the dock, but one need not be indicted to notice the law's constraints. Operators who chose to comply with the field rules also had their rights determined in the proceeding.

The mainstay of the court of appeals' analysis and WBD's argument is that field

---

64. 35 S.W.3d at 43; *id.* at 48 (Kidd, J., concurring).

65. Tex. Gov't Code § 2001.003(1).

66. 35 S.W.3d at 45.

67. *Id.* at 43.

rules come within the APA's definition of a rule, which is "a state agency statement of general applicability that ... implements, interprets, or prescribes law or policy...." [68] While this definition may be read abstractly to encompass field rules, in the context of the APA as a whole it is clear that field rules are not rules of "general applicability" which must not be made without public comment but are an adjudication of the individual interests principally affected. One need only compare field rules detailing spacing and proration requirements in a specific reservoir and its own peculiar geologic formations with the Commission's statewide rules which govern the entire oil and gas industry for the public good to see this difference. We noted this difference in *Railroad Commission v. Torch Operating Co.*, comparing temporary field rules to statewide rules:

> Temporary field rules are not adopted under the rulemaking provisions of the Administrative Procedure Act. Instead, they are promulgated through the adjudication provisions of the Act because these rules concern a specific field and a specific group of operators and do not affect the statewide oil and gas industry as a whole.[69]

By "general applicability", the APA definition references statements that affect the interest of the public at large such that they cannot be given the effect of law without public input. The definition does not reference statements made in determining individual rights, even if the number of individuals is large and they can be described as falling within a defined class.

Thus, as we read the APA, judicial review of orders adopting field rules should be the same as in other contested case decisions. As a practical matter, such review affords the participants in the proceeding ample opportunity to challenge the Commission's decision but also provides for the reasonable finality necessary for conducting operations in the field. To allow field rules to be challenged in a declaratory judgment action that can be filed at any time would deny them the certainty essential to their effectiveness. The court of appeals wrote: "We can think of no reason why the legislature would have wanted rules adopted [with contested case] procedures to be immune from challenge under APA § 2001.038." [70] The reason to require that orders adopting field rules be reviewed like other contested case decisions is to afford the certainty such decisions require as long as circumstances are unchanged.

Accordingly, we conclude that Commission field rules adopted in a contested case like those involved here cannot be challenged in a declaratory judgment action under section 2001.038 of the APA.

### III

█ WBD argues that even if section 2001.038 would not otherwise apply, it should nevertheless be permitted to sue under that statute because the notice it received was inadequate for a contested case proceeding. According to the notice, participation in the proceeding was only invited, not compelled, and WBD was never formally named as a party. But the notice was very clear in warning that WBD's rights would be affected. WBD was aware that it could intervene in the proceeding and chose not to do so. Not only did the Commission's notice urge par-

**68.** Tex. Gov't Code § 2001.003(6).

**69.** 912 S.W.2d 790, 791 n. 1 (Tex.1995) (citing 3 Ernest E. Smith & Jacqueline Lang Weav-

er, Texas Law of Oil and Gas § 15.3, at 214–215 (1995)).

**70.** 35 S.W.3d at 45.

ticipation, it set out changes the Commission was considering making in the field rules and warned that other, different changes might also be made. We think the notice was sufficient for WBD to know that its production rights in the Panhandle Fields were to be adjudicated.

As we have noted above, WBD asserts a number of other bases for jurisdiction of its claims in the district court, which the court of appeals did not find it necessary to address. Although the parties have devoted a portion of their briefing in this Court to WBD's other jurisdictional arguments, we believe they should first be addressed by the court of appeals.

\* \* \* \* \* \*

For these reasons, the judgment of the court of appeals is reversed and the case is remanded to that court for further proceedings.

Justice WAINWRIGHT did not participate in the decision.