

# Fourth Court of Appeals

## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00066-CV

**CONOCOPHILLIPS COMPANY**,
Appellant

v.

**VAQUILLAS UNPROVEN MINERALS, LTD.**,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2014CVQ000438-D4
Honorable Oscar J. Hale, Jr., Judge Presiding

Opinion by:      Sandee Bryan Marion, Chief Justice

Sitting:           Sandee Bryan Marion, Chief Justice
                   Rebeca C. Martinez, Justice
                   Luz Elena D. Chapa, Justice

Delivered and Filed:  August 5, 2015

AFFIRMED

This is a permissive, interlocutory appeal of a trial court's order on cross-motions for summary judgment. The trial court's order denies the motion for summary judgment filed by appellant, ConocoPhillips Company, and grants the cross-motion for partial summary judgment filed by appellee, Vaquillas Unproven Minerals, Ltd. The trial court's order declares that ConocoPhillips breached two oil and gas leases by failing to release all acreage in excess of 40 acres for each producing and shut-in natural gas well capable of producing in paying quantities. The sole issue presented on appeal is whether the trial court correctly concluded that the leases

only allowed ConocoPhillips to retain 40 acres per well, as opposed to the 640 acres per well that ConocoPhillips believes it was entitled to retain.

## FACTUAL BACKGROUND

ConocoPhillips and Vaquillas are parties to two oil and gas leases. One of the leases relates to a 26,622.79-acre tract of land, and the other lease relates to a 6,740-acre tract of land. Both of the leases contain a "retained acreage" clause which sets forth the number of acres around each producing or shut-in gas well that ConocoPhillips was entitled to retain after its continuous drilling program ended. It is undisputed that ConocoPhillips's continuous drilling program ended on June 21, 2012.

With regard to the number of acres ConocoPhillips was entitled to retain, the retained acreage clause in each lease provided that after ConocoPhillips's continuous drilling program ended:

> . . ., Lessee covenants and agrees to execute and deliver to Lessor a written release of any and all portions of this lease which have not been drilled to a density of at least 40 acres for each producing oil well and 640 acres for each producing or shut-in gas well, except that in case any rule adopted by the Railroad Commission of Texas or other regulating authority for any field on this lease provides for a spacing or proration establishing different units of acreage per well, then such established different units shall be held under this lease by such production, in lieu of the 40 and 640-acre units above mentioned . . . .

The parties dispute arises over whether the Railroad Commission of Texas adopted a field rule that provided for spacing establishing different units of acreage per well. The trial court concluded that such a rule had been adopted, and the rule controlled the number of acres ConocoPhillips was entitled to retain around each gas well. Under the trial court's construction of the retained acreage clause, ConocoPhillips was entitled to retain only 40 acres for each producing gas well or shut-in gas well capable of producing in paying quantities. As a result, ConocoPhillips was required to release an additional 15,351 acres to Vaquillas.

## STANDARD OF REVIEW

We review a summary judgment *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider all the evidence in the light most favorable to the respondent, indulging all reasonable inferences in favor of the respondent, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). "When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In such a case, "we render the judgment [that] the trial court should have rendered." *Id*.

Neither party contends the oil and gas leases are ambiguous. Construing an unambiguous contract is a question of law that we review de novo. *Willis v. Donnelly*, 199 S.W.3d 262, 275 (Tex. 2006); *Coker v. Coker*, 650 S.W.3d 391, 393-94 (Tex. 1983); *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 495 (Tex. App.—San Antonio 2013, pet. denied). "'In construing an unambiguous oil and gas lease our task is to ascertain the parties' intentions as expressed in the lease.'" *BP Am. Prod. Co.*, 419 S.W.3d at 497 (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). "We examine the plain language of the entire lease agreement, consider the interaction between each of its provisions, and seek 'to harmonize and give effect to all the [lease] provisions.'" *Id*. (quoting *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)).

## RETAINED ACREAGE CLAUSES

A retained acreage clause in an oil and gas lease authorizes the lessee to retain acreage around a producing well in the event of a forfeiture of the lease. *See* 8 Patrick H. Martin and Bruce

M. Kramer, Williams & Meyers, MANUAL OF OIL AND GAS TERMS 902.1 (2014); Scott C. Petry, *Drafting the Retained Acreage Clause: The Effect of Governmental Authority on Retained Acreage*, State Bar of Tex. Prof. Dev. Program, 27TH ANNUAL ADVANCED OIL, GAS AND ENERGY RESOURCES LAW COURSE 1 (2009). The retained acreage clause serves two purposes. First, it can "replace the lessor's need to utilize the implied covenant of reasonable development as the sole means to see that its acreage is fully developed." Bruce M. Kramer, *Oil and Gas Leases and Pooling: A Look Back and A Peek Ahead*, 45 TEX. TECH L. REV. 877, 881 (2013). The clause fulfills this purpose by requiring the lessee to release all acreage under a lease, at the end of the primary term or a continuous drilling program, other than specific acreage surrounding a producing well. *Id*. at 881 n. 28. Second, the retained acreage clause protects the lessee "from losing those portions of a lease that had productive wells located thereon if the rest of the lease terminated." *Id*.

Generally, the retained acreage clause states the specific number of acres that can be retained surrounding each producing well. *See Sutton v. SM Energy Co.*, 421 S.W.3d 153, 159 (Tex. App.—San Antonio 2013, no pet.); H. Philip Whitworth & D. Davin McGinnis, *Square Pegs, Round Holes: The Application and Evolution of Traditional Legal and Regulatory Concepts for Horizontal Wells*, 7 TEX. J. OIL GAS & ENERGY L. 177, 209 (2012). However, "[t]he clause may provide for a change in this basic size if the Railroad Commission adopts field rules providing for spacing or proration units of a different size." 1 Ernest E. Smith and Jacqueline Lang Weaver, TEXAS LAW OF OIL AND GAS § 5.2[B][3], 5-26 (2014). "In this event the acreage held by a well may be either greater or smaller than the default acreage." *Id*.; *see also* Scott C. Petry, *Drafting the Retained Acreage Clause: The Effect of Governmental Authority on Retained Acreage*, State Bar of Tex. Prof. Dev. Program, 27TH ANNUAL ADVANCED OIL, GAS AND ENERGY RESOURCES

LAW COURSE 3 (2009) (noting when a lease ties the retained acreage clause to governmental authority, the parties may not "fully anticipate the consequences of doing so").

In this case, the retained acreage clause initially refers to a specific number of acres that ConocoPhillips was entitled to retain when its continuous drilling program ended, namely 40 acres for each producing oil well and 640 acres for each producing or shut-in gas well. The clause then, however, contains an exception in the event field rules are adopted "provid[ing] for a spacing or proration establishing different units of acreage per well."

### ADOPTION AND APPLICATION OF FIELD RULES

"To regulate oil and gas production, the Railroad Commission of Texas has adopted general rules applicable throughout the State," called statewide rules. *Railroad Comm'n of Tex. v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 70 (Tex. 2003). "[B]ecause these general rules cannot adequately address the widely varying conditions found in the thousands of oil and gas reservoirs in Texas, the Commission [also] may issue orders with detailed regulations for a specific field, which the Commission calls field rules." *Id.*

ConocoPhillips does not dispute that the Railroad Commission adopted field rules applicable to the fields included in the oil and gas leases.[1] In this case, the applicable field rules provide:

> Rule 2. No well shall hereafter be drilled nearer than FOUR HUNDRED SIXTY SEVEN (467) feet to any property line, lease line or subdivision line and no well shall be drilled nearer than ONE THOUSAND TWO HUNDRED (1,200) feet to any applied for, permitted or completed well in the same reservoir on the same lease, pooled unit or unitized tract. ….
>
> The aforementioned distances in the above rule are minimum distances to allow an operator flexibility in locating a well, and the above spacing rule and the

---

[1] Field rules are distinct from statewide rules, and only a specially adopted field rule, as opposed to statewide rules, triggers the exception in the retained acreage clause. *See ConocoPhillips Co. v. Ramirez*, No. 04-05-00488-CV, 2006 WL 1748584, at *2 (Tex. App.—San Antonio June 28, 2006, no pet.).

other rules to follow are for the purpose of permitting only one well to each drilling and proration unit.

Although ConocoPhillips agrees that Rule 2 contains a spacing requirement, ConocoPhillips contends this spacing requirement does not establish "different units of acreage per well." Vaquillas responds that Rule 2 was only required to provide for a spacing that itself established different units of acreage per well.[2]

Although the spacing requirement in Rule 2 does not expressly set forth a number of acres per well, Rule 38 of the statewide rules contains the standard drilling unit for a gas field "wherein only spacing rules, either special, country regular, or statewide, are applicable." 16 TEX. ADMIN. CODE § 3.38(b)(2)(A). The rule then contains a chart providing that if the spacing rule is 467-1200, like the one here, the acreage requirement is 40 acres per well for both oil and gas wells. *Id*. It is important to note that Rule 38 expressly applies to "special" spacing rules, which is a reference to spacing rules adopted in field rules for a specific field. *Id*.; *see also* Scott C. Petry, *Drafting the Retained Acreage Clause: The Effect of Governmental Authority on Retained Acreage*, State Bar of Tex. Prof. Dev. Program, 27TH ANNUAL ADVANCED OIL, GAS AND ENERGY RESOURCES LAW COURSE 2 (2009) (noting Railroad Commission has three types of rules: statewide rules, country regular rules, and special field rules). Therefore, Rule 38 establishes the standard acreage for a well when a field rule only provides for spacing. Because this standard acreage is "different" from the initial acreage set forth in the retained acreage clause, the standard acreage controls the number of acres ConocoPhillips was entitled to retain under the leases. *See* Wade Caldwell, *Ten Oil and Gas Lease Clauses You Want*, MINERAL RIGHTS FORUM (Sept. 3, 2012, 2:30 p.m.),

---

[2] Vaquillas argues that ConocoPhillips's interpretation would require this court to ignore certain language in the retained acreage clause. As currently written, the exception applies when the field rule "provides for a spacing or proration establishing different units of acreage per well." Under ConocoPhillips's interpretation, Vaquillas argues this court would be required to ignore the phrase "provides for a spacing or proration," so that the clause would apply the exception when the field rule "establish[es] different units of acreage."

http://www.mineralrightsforum.com/profiles/blogs/ten-oil-gas-lease-clauses-recommended ("A well-drafted retained acreage clause should limit the acreage being retained by the existing well to a set number of acres, or the minimum size required by the Texas Railroad Commission, whichever is less.").

In its reply brief, ConocoPhillips argues that the field rule did not establish a maximum number of acres that could be assigned to a well, and Rule 38 establishes only the minimum number of acres required to drill a well. The retained acreage clause, however, did not limit the exception to field rules that established a maximum number of acres per well or a maximum number of acres that could be retained once the continuous drilling program ended. Instead, the retained acreage clause contained an exception applicable if field rules are adopted "provid[ing] for a spacing or proration establishing different units of acreage per well." In this case, the field rules did provide for spacing and that spacing establishes "different" units of acreage per well. Although ConocoPhillips may not have "fully anticipated the consequences" of tying the retained acreage clause to a field rule that provided for spacing that established different units of acreage per well, this court is not allowed to rewrite the parties' lease. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003); *see also* Scott C. Petry, *Drafting the Retained Acreage Clause: The Effect of Governmental Authority on Retained Acreage*, State Bar of Tex. Prof. Dev. Program, 27TH ANNUAL ADVANCED OIL, GAS AND ENERGY RESOURCES LAW COURSE 3 (2009) (noting when a lease ties the retained acreage clause to governmental authority, the parties may not "fully anticipate the consequences of doing so").

ConocoPhillips also contends that if the trial court's construction of the retained acreage clause stands, the exception would swallow the general rule. ConocoPhillips argues that if the minimum required acreage under Rule 38 is applied, the general rule for retaining 640 acres for a gas well would never apply. This argument ignores, however, that the exception applies only if a

field rule is adopted that provides for spacing or proration. If no such rule is adopted, then the general rule still prevails.

In other words, the exception is conditioned on the adoption of a field rule. If that condition is met, the exception, as worded, should apply. If that condition is not met, the general rule would continue to apply. *See ConocoPhillips Co.*, 2006 WL 1748584, at *3 (applying general rule where no field rules adopted).

ConocoPhillips further argues that the trial court's construction of the retained acreage clause would adversely affect the provision in the lease allowing for pooling. This argument, however, only establishes that parties must be careful in drafting oil and gas leases to avoid conflicts. As one commentator has noted:

> Conflicts between the number of acres authorized for retention under the retained acreage clause and the number of acres authorized for pooling under the pooling clause can lead to unintended and problematic results for the lessee. If a retained acreage clause does not allow the lessee to retain all of the acreage included in a validly pooled unit, the lease could potentially terminate as to a portion of the pooled unit, thereby having the unintended effect of reducing the lessor's participation in unit production. For example, the typical lease form may give 640-acre pooling authority for gas, but there may be a typewritten addendum providing that the lease terminates at the end of the continuous development term as to all acreage save and except the acreage included within a producing well's proration unit. If the lessee has formed a 320-acre proration unit, the lessee, despite having formed a valid 640-acre pooled unit, may be required to release half of this pooled unit to comply with the retained acreage clause. Such a result obviously would have been unintended by either the lessee or the lessor, and care should be used to avoid such unintended consequences when drafting a lease.

H. Philip Whitworth & D. Davin McGinnis, *Square Pegs, Round Holes: The Application and Evolution of Traditional Legal and Regulatory Concepts for Horizontal Wells*, 7 TEX. J. OIL GAS & ENERGY L 177, 209 (2012). Although the retained acreage clause may have unintended consequences on the leases' pooling provision, this court is not allowed to rewrite the parties' contract. *See Am. Mfrs. Mut. Ins. Co.*, 124 S.W.3d at 162.

ConocoPhillips's next argument relies on a sentence in the retained acreage clause that provides: "Each retained unit shall contain at least one (1) well producing or capable of producing oil or gas in paying quantities." ConocoPhillips contends limiting the retained acreage to 40 acres per well would render the "at least" language superfluous because ConocoPhillips would be precluded from obtaining a permit for drilling a second well on the retained acreage, and, as a result, there would never be more than one well on the retained acreage.

Vaquillas's brief lists several possibilities under which a retained unit could have more than one well. For example, Vaquillas notes the Railroad Commission could never have adopted a field rule for the fields in the lease, and under that circumstance, more than one gas well could exist on the 640 acres that would be retained around each gas well under the general rule. Similar to ConocoPhillips's contention that the exception could swallow the general rule, the exception only applies if a field rule is adopted. *See ConocoPhillips Co.*, 2006 WL 1748584, at *3 (applying general rule where no field rules adopted). In this case, if no field rule was adopted, more than one well could exist on the retained unit.

ConocoPhillips further argues that under the general rule, the number of acres retained for an oil well (40) is different than for a gas well (640); however, under the trial court's construction of the exception, there is no difference in the number of acres retained for each type of well. Although this statement is true, ConocoPhillips agreed to the inclusion of the exception in the leases. Because the leases did not apply the exception only when field rules provided for different spacing requirements for different types of wells, the language in the leases controls. *See* Scott C. Petry, *Drafting the Retained Acreage Clause: The Effect of Governmental Authority on Retained Acreage*, State Bar of Tex. Prof. Dev. Program, 27TH ANNUAL ADVANCED OIL, GAS AND ENERGY RESOURCES LAW COURSE 2 (2009) ("Under Statewide Rules of '467/1200', one should be aware that density for a GAS WELL is also forty (40) acres!").

Finally, ConocoPhillips contends that this court should not interpret the retained acreage clause to impose a limitation on the grant unless the language is clear. *See Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002) ("[W]e will not hold the lease's language to impose a special limitation on the grant unless the language is so clear, precise, and unequivocal that we can reasonably give it no other meaning."). In this case, it is undisputed that the lease or grant ended with regard to the acres ConocoPhillips was not entitled to retain when ConocoPhillips's continuous drilling program ended. The retained acreage clause is clear, precise, and unequivocal in that regard. Therefore, it is undisputed that the retained acreage clause imposed a special limitation on the grant. The only dispute relates to the number of acres ConocoPhillips is entitled to retain.

Based on all the foregoing, we hold the trial court properly construed the retained acreage clause. Accordingly, the trial court properly granted the summary judgment in favor of Vaquillas.

## CONCLUSION

The trial court's order is affirmed.

Sandee Bryan Marion, Chief Justice