**Affirmed and Memorandum Opinion filed April 15, 2025.**



In The

# Fifteenth Court of Appeals

### NO. 15-24-00047-CV

**A-TAP, INC., Appellant**

**V.**

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION, Appellee**

**On Appeal from the 419th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-21-002898**

### MEMORANDUM OPINION

Appellant A-TAP, Inc. appeals the district court's judgment affirming the Texas Health and Human Services Commission's (the Commission) Final Order that sustained the Commission's recoupment of over $120,000 of Medicaid claims paid to A-TAP. The Final Order found those Medicaid claims were not properly documented in accordance with A-TAP's provider contracts with the Commission and the Commission's regulatory rules. On appeal, A-TAP does not dispute the factual findings of the Final Order. A-TAP contends the Final Order should be

reversed because the billing guidelines and the requirements of the Commission's claims administrator—which were incorporated in A-TAP's provider contracts and referenced in the Commission's rules—are invalid, unpromulgated agency rules. Because we conclude the billing guidelines and the requirements of the Commission's claims administrator are not rules under the Administrative Procedure Act (APA), we affirm the district court's judgment.

## BACKGROUND

### Statutory and Regulatory Background

The Commission supervises the administration and operation of Medicaid. Tex. Gov't Code § 531.0055(b)(1). Home and Community-based Services (HCS) and Texas Home Living (TxHmL) are state-run Medicaid programs that provide community-based services and other supportive programs to eligible Texans with an intellectual disability or related condition so that they can live in their own homes in the community. 40 Tex. Admin. Code §§ 9.154(a), .554(a).[1] Those services include day habilitation, nursing care, respite care, employment assistance, residential support services, and host home/companion care. *Id.* §§ 9.154, .555.

The Commission contracts with program providers, such as A-TAP, to provide HCS and TxHmL services to eligible people. The Commission reimburses program providers at certain rates for the services provided with Medicaid funds. *Id.* §§ 9.170(a), .573(a)(1). To be paid, program providers "must submit a service claim that meets the requirements in §49.311 of this title (relating to Claims Payment) and the TxHmL Billing Guidelines or the CFC Billing Guidelines for

---

[1] The regulatory rules relating to the HCS and TxHmL programs under Title 40 of the Texas Administrative Code were repealed or transferred to Title 26 of the Texas Administrative Code in 2023 and 2024. *See* 48 Tex. Reg. 1154 (2023), 49 Tex. Reg. 2092 (2024). All cites to Title 40 of the Texas Administrative Code in this opinion are to the rules that were in effect in 2019 and that apply to this case.

2

HCS and TxHmL Providers." *Id.* § 9.573(a)(2); *see also id.* § 9.170(4)(F). Rule 49.311(b) requires, among other things, that a service claim be "supported by records required by the contract and [Commission] rules governing services provided under the contract" and "submitted in accordance with procedures required by [the Commission] rules governing services provided under the contract and by the claims administrator." *Id.* § 49.311(b)(10), (13).

The Commission conducts billing and payment reviews to monitor program providers' compliance with the applicable rules and billing guidelines. *Id.* §§ 9.170(6); 9.573(b)(1). After a billing and payment review, the Commission may recoup payments from a program provider if it finds a provider's claims were not in compliance. *Id.* §§ 9.170(6), .573(b)(1)(A). If a provider disputes the Commission's demand for recoupment, it has a right to a contested case hearing under the APA. *Id.* §§ 9.186, .575.

**Factual and Procedural Background**

A-TAP provides HCS and TxHmL services to eligible clients under five contracts with the Commission.[2] Under those contracts, A-TAP agreed to comply with applicable federal and state laws, rules, and regulations, applicable billing guidelines, and the requirements of the claims administrator. During the relevant time period, the "claims administrator" was the Commission's electronic computer system, known as "CARE," that processes billing and payments.

In September 2019, the Commission conducted a billing and payment review of A-TAP's HCS and TxHmL services claims. The purpose of the review was to ensure A-TAP's claims met the requirements of A-TAP's contracts and

---

[2] A-TAP's contracts, executed in 2011 and 2013, were originally with the Texas Department of Aging and Disability Services (DADS). DADS was dissolved in 2017 and its functions were transferred to the Commission. Act of May 28, 2015, 84th Leg., R.S., ch. 837 (S.B. 200), § 1.01(a), sec. 531.0202(b), 2015 Tex. Gen. Laws 2489–96 (expired Sept. 1, 2023).

3

applicable rules. The Commission's review found over one thousand billing documentation errors resulting in thousands of dollars in unverified claims. The Commission notified A-TAP of the results of its review and demanded payment of $141,842.53.

A-TAP appealed the Commission's demand for payment. At the two-day contested hearing before an Administrative Law Judge (ALJ), A-TAP disputed, among other things, two categories of documentation errors found by the Commission: (1) missing daily signatures on service logs and (2) missing staff IDs in the CARE system.

### 1.    *Daily Signatures*

First, A-TAP's weekly service logs for certain services, such as residential support, were signed by staff members only once for the entire week—not for each day the service was provided. Because of this omission, the Commission could not verify which staff member provided each daily service to the client, and therefore sought recoupment for those claims that were missing a daily signature. At the hearing, A-TAP did not dispute the relevant service logs were missing daily signatures, but contended a daily signature is not explicitly required under the billing guidelines or the rules. The Commission's testimony explained that based on the applicable billing guidelines for written service logs, each service event required a signature. Daily units of service, such as residential support, required a provider signature for each day that service was provided.

### 2.    *Staff IDs*

Second, the Commission's billing review attempted to verify for each claim that the staff ID entered into the CARE computer system by the provider matched the staff person providing the service on the provider's claim form. The evidence

at the contested hearing showed A-TAP repeatedly did not enter staff ID numbers in the CARE system that matched the staff person on its claim forms. A-TAP did not dispute the staff ID errors, but contended the billing guidelines did not require a unique staff ID number to be assigned to each staff person. The Commission explained that the CARE computer system is the "claims administrator" and therefore, the rules require providers to follow its requirements. *See* 40 Tex. Admin. Code § 49.311(b)(13).

At the hearing, A-TAP also generally contended that the billing guidelines themselves were unpromulgated rules. After the hearing, the ALJ issued a Final Order finding that most of the Commission's assigned billing errors were proper, including the errors for the missing daily signatures and staff IDs. The Final Order sustained the Commission's demand for payment for $124,811.99.

A-TAP filed a motion for rehearing, which was denied. A-TAP then sought judicial review of the Final Order in the district court. After a hearing in which the administrative record was entered into evidence, the trial court affirmed the Final Order. This appeal followed.

## STANDARD OF REVIEW AND GOVERNING LAW

Our review of the agency's Final Order is governed by the substantial-evidence standard under the APA. Tex. Gov't Code § 2001.174. This standard requires us to reverse and remand if the appellant's substantial rights have been prejudiced and the agency's decision is

(A) in violation of a constitutional or statutory provision;
(B) in excess of the agency's statutory authority;
(C) made through unlawful procedure;
(D) affected by other error of law;
(E) not reasonably supported by substantial evidence considering the

5

reliable and probative evidence in the record as a whole; or

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* § 2001.174(2)(A)–(F).

On appeal, A-TAP does not dispute the factual findings in the Final Order; rather, A-TAP argues that the billing guidelines and the CARE system's requirements are rules that were not properly promulgated under the APA's rulemaking procedures. Therefore, according to A-TAP, the Final Order should be reversed because it is based on invalid, unpromulgated agency rules.

Whether the requirements of the billing guidelines and the CARE system are rules under the APA are questions of law we review de novo. *See Hyde v. Harrison Cnty.*, No. 15–24–00014–CV, --- S.W.3d ---, 2025 WL 868083, at *2 (Tex. App.—15th Dist. Mar. 20, 2025, no pet. h.) (explaining questions of law are reviewed de novo under substantial-evidence review); *Teladoc, Inc. v. Texas Med. Bd.*, 453 S.W.3d 606, 614 (Tex. App—Austin 2014, pet. denied) (construction of statutes and administrative rules presents questions of law reviewed de novo). The APA defines "rule" as "a state agency statement of general applicability" that "implements, interprets, or prescribes law or policy" or "describes the procedure or practice requirements of a state agency." Tex. Gov't Code § 2001.003(6)(A). This "includes the amendment or repeal of a prior rule" but "does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." *Id.* § 2001.003(6)(B)-(C).

## DISCUSSION

The Commission has the authority to adopt rules and policies for the operation of the agency. Tex. Gov't Code § 553.0055(e). A-TAP does not dispute that the regulatory rules relating to reimbursement for the HCS and TxHmL

6

programs, specifically Rules 9.170, 9.573, and 49.311 (the Rules), were properly promulgated under the APA's rulemaking procedures. *See e.g.*, Tex. Gov't Code §§ 2001.023–.024 (public notice requirements), .029 (public comment requirements). The Rules specifically reference and require compliance with the billing guidelines and the claims administrator to be reimbursed. 40 Tex. Admin. Code §§ 9.573(a)(2), .170(4)(F); § 49.311(b)(10), (13). By referencing the billing guidelines and the claims administrator in the Rules, it was contemplated that additional requirements for reimbursement would exist outside the text of the Rules. *See Keeton v. Tex. Racing Comm'n*, No. 03–03–00049–CV, 2003 WL 21939996, at \*3 (Tex. App.—Austin Aug. 14, 2003, pet. denied) (mem. op) ("[I]t makes sense that the Commission listed specific drugs in [the medication classification] guidelines instead of rules because agencies have greater flexibility in revising guidelines than rules.").

During the adoption of these Rules, program providers—including A-TAP—were put on notice of, and had the opportunity to comment on, the Rules' requirements to comply with the billing guidelines and the claims administrator.[3] *See e.g.*, Tex. Gov't Code §§ 2001.023–.024, .029. We therefore cannot apply the APA rule definition to the guidelines and the CARE system in isolation, and ignore the fact both were specifically referenced in the Rules as requirements for reimbursement. This would essentially allow A-TAP to make an improper, back-door substantial compliance challenge to the reimbursement Rules, which again A-TAP does not dispute were properly promulgated. *See* Tex. Gov't Code § 2001.035(b) (challenges that agency did not substantially comply with rulemaking procedures must be made "not later than the second anniversary of the

---

[3] Not only do the Rules require compliance for reimbursement, A-TAP agreed in its contracts to submit claims in accordance with the billing guidelines and the requirements of the claims administrator.

effective date of the rule.").

A-TAP is then left to argue that changes to the billing guidelines or the CARE system amount to agency statements of general applicability that effectively amend existing rules, requiring formal rule promulgation. We disagree.

A-TAP argues in its briefs that the billing guidelines and the CARE system, as well as any amendments to them, are statements of general applicability as required to constitute a rule. Tex. Gov't Code § 2001.003(6)(A). The term "general applicability" under the APA references "statements that affect the interest of the public at large such that they cannot be given the effect of law without public input." *Railroad Comm'n of Tex. v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003). A-TAP does not explain how the billing guidelines and the CARE system apply to the public at large. They do not. Rather, they apply only to those entities who choose to contract with the Commission to provide specific services to qualifying individuals under the TxHmL and HCS programs. When those entities choose to contract with the Commission, they expressly agree to comply with the applicable billing guidelines and the claims administrator (in this case, CARE) under their contracts.

The cases A-TAP relies on involved agency statements generally applicable to the public at large and are therefore distinguishable. For example, in *El Paso Hospital District*, the supreme court concluded the agency's cutoff date for considering claims data used in calculating Medicaid reimbursement rates was a statement of general applicability because it applied to "all hospitals." *El Paso Hosp. Dist. v. Tex. Health and Hum. Services Comm'n*, 247 S.W.3d 709, 714 (Tex. 2008).[4] Similarly, in *Teladoc*, the complainant argued that the agency's

---

[4] A-TAP argues the regulatory rules at the time required the hospitals in *El Paso* to sign a written agreement with the Commission to be reimbursed. *See* 1 Tex. Admin. Code

statement applied only to one doctor, but the Third Court of Appeals concluded that the agency statement was an amendment to the rule in part because it applied to all Texas physicians. *Teladoc*, 453 S.W.3d at 615.

A-TAP also argues that because the billing guidelines and the CARE system have additional requirements beyond what is required under the Rules—such as the daily signature requirements and the staff ID requirements—they effectively amend Rules 9.170, 9.573, and 49.311. *See* Tex. Gov't Code § 2001.003(6)(B). But the billing guidelines and the CARE system do not change the text of the Rules' requirements that providers must comply with the billing guidelines and the claims administrator to be reimbursed. If we were to accept A-TAP's position, then every time the Commission makes a minor update to its computer system or the guidelines, it would have to promulgate a new rule. This would be an unworkable standard.

The cases on which A-TAP relies for this argument are again distinguishable and ultimately do not support its position. In those cases, the agency statements that purported to interpret or apply a rule effectively amended the text of a pre-existing rule. For example, in *El Paso Hospital District*, the regulatory rules governing the calculation of prospective Medicaid reimbursement rates required the Commission to consider claims data from Medicaid patients admitted in a "base year," which was defined as "[a] 12-consecutive-month period of claims data selected by the [department] or its designee." *El Paso Hosp. Dist.*, 247 S.W.3d at 712–13. The supreme court held the Commission's imposition of a cutoff date, selecting claims data only from the base-year that were paid by a certain date,

---

§ 354.1077(a)(3). This rule, however, is not mentioned in *El Paso* and the opinion expressly states the cutoff date applied to "all hospitals." *Id.* at 714. Further, the opinion explains the Social Security Act requires the Commission to reimburse hospitals that provide inpatient services to Medicaid patients. *See id.* at 712 (citing 42 U.S.C. § 1396(a)(13)).

effectively amended the "base year" definition already in the rule and therefore was considered a rule amendment under the APA. *Id.* at 714. Similarly in *Teladoc*, the Third Court of Appeals held the Texas Medical Board's statements in its letter to Teladoc were "tantamount to amendments to the existing text" of a rule. *Teladoc, Inc.*, 453 S.W.3d at 620.

Unlike the facts of *El Paso* and *Teladoc*, the billing guidelines and the CARE system in this case do not amend the text of the Rules' requirements to comply with those guidelines and the claims administrator's requirements. *See* 40 Tex. Admin. Code §§ 9.573(a)(2), .170(4)(F); § 49.311(b)(10), (13). By referencing the billing guidelines and the claims administrator in the rules themselves, and then also incorporating them into A-TAP's and other providers' contracts, the agency allowed itself flexibility to amend the guidelines and requirements of the claims administrator without formally promulgating an amendment to the rule every time it did so.

Because the billing guidelines and the CARE system requirements are not invalid rules under the APA, A-TAP's arguments for reversing the Final Order are without merit. We therefore affirm the district court's judgment.

## CONCLUSION

We affirm the judgment of the district court upholding the Commission's Final Order.

/s/ Scott K. Field
Scott K. Field
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.

10