ACCEPTED
15-24-00118-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/10/2025 3:54 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00118-CV

# COURT OF APPEALS FOR THE FIFTEENTH DISTRICT OF TEXAS AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/10/2025 3:54:00 PM
CHRISTOPHER A. PRINE
Clerk

## Aspire Power Ventures, LP,

*Appellant,*

v.

## Public Utility Commission of Texas, Electric Reliability Council of Texas, Thomas Gleeson, Lori Cobos, Jimmy Glotfelty, Kathleen Jackson, and Courtney Hjaltman,

*Appellees.*

---

### On Appeal from the 345th Judicial District Court
### Travis County, Texas
### Cause No. D-1-GN-24-003384
### *Hon. Catherine A. Mauzy, Presiding*

---

## APPELLANT'S REPLY BRIEF

---

Chrysta L. Castañeda
  Texas Bar No. 15325625
  chrysta@castaneda-firm.com
Nicole Michael
THE CASTAÑEDA FIRM
325 N. St. Paul, Suite 2030
Dallas, Texas 75201
Phone: (214) 282-8579
Fax: (214) 602-9187

Monica Latin
Brent M. Rubin
Ken Carroll
CARRINGTON, COLEMAN,
  SLOMAN & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
Phone: (214) 855-3000
Fax: (214) 580-2641

*Attorneys for Appellant Aspire Power Ventures, LP*

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ................................................................. 2

TABLE OF AUTHORITIES ........................................................... 4

INTRODUCTION ........................................................................ 6

ARGUMENT ............................................................................. 10

I.     The ECRS Rules are "rules" governed by the APA. ..................... 10

       A.    What makes a "rule" an "APA Rule"? .................................. 10

       B.    "Rules" adopted by the PUC on its own are "APA
             Rules," and that would include the ECRS Rules if the
             PUC itself had adopted them. ........................................... 10

       C.    The dispositive statutory language of PURA: the PUC
             "delegate[d]" part of its rulemaking authority and
             "responsibilities" to ERCOT, necessarily making
             ERCOT's procedure for adopting the ECRS Rules
             subject to and reviewable under the APA, just as if the
             PUC itself had adopted them. ........................................... 11

             1.    ERCOT has no rulemaking authority of its own ......... 11

             2.    ERCOT's adoption of the ECRS Rules through
                   the authority and with the responsibilities
                   delegated to it by the PUC is subject to the APA. ........ 13

II.    The Supreme Court's opinion in *RWE* did not resolve the
       jurisdictional question at issue here. ........................................ 16

       A.    The Supreme Court in *RWE* ruled only on the direct
             appealability to a court of appeals of the PUC's order
             *approving* protocols adopted by ERCOT .............................. 17

       B.    *RWE* did not involve or address the situation at issue
             here: pre-2021 protocols adopted and made effective by

ERCOT alone, through authority delegated by the
PUC. ..................................................................................21

III.    Aspire was not required to exhaust administrative remedies
before bringing its claims to the Travis County District
Court. ................................................................................24

IV.    Aspire's *ultra vires* allegations state a claim sufficient to
establish jurisdiction. .....................................................25

V.    The sky will not fall if ERCOT's ECRS Rules are subjected to
the APA and APA review. ...............................................27

CONCLUSION & PRAYER FOR RELIEF ......................................................29

CERTIFICATE OF COMPLIANCE ..............................................................31

CERTIFICATE OF SERVICE .....................................................................32

APPENDIX
        Tab A
        Tab B
        Tab C
        Tab D

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Burnett v. Lunceford,*
545 S.W.3d 587 (Tex.App.—El Paso 2016, pet. denied) ..................... 25

*City of Garland v. Byrd,*
97 S.W.3d 601 (Tex. App.—Dallas 2002, pet. denied) ........................ 14

*City of New Braunfels v. Allen,*
132 S.W.3d 157 (Tex. App.—Austin 2004, no pet.) ........................... 22

*Lindsay v. Sterling,*
690 S.W.2d 560, 561-62 (Tex. 1985) ................................................. 14

*PUC v. RWE Renewables Americas, LLC,*
691 S.W.3d 484 (Tex. 2024) ..................................................... *passim*

*PUC v. RWE Renewables Americas, LLC,*
No. 23-0555 (Tex.) ............................................................................. 18

*RR Comm'n v. WBD Oil & Gas Co.,*
104 S.W.3d 69 (Tex. 2003) ................................................................ 12

*RWE Renewables Americas, LLC v. PUC,*
No. 03-21-00356-CV (Tex. App.—Austin) ......................................... 18

*State v. City of Dallas,* No. DC-24-14434 (298th District
Court, Dallas County, Texas) ........................................................... 15

*Tex. Tel. Ass'n v. PUC,*
653 S.W.3d 227 (Tex. App.—Austin 2022, no pet.) ........................... 24

*Texas Mutual Insurance Co. v. Ruttiger,*
381 S.W.3d 430 (Tex. 2012) .............................................................. 25

**Statutes and Rules**

Tex. Gov't Code § 311.021 ...................................................................25

Tex. Gov't Code § 411.209(a) ...............................................................15

Tex. Gov't Code §§ 2001.023-.024 .......................................................28

Tex. Gov't Code § 2001.034 ..................................................................28

Tex. Util. Code § 39.001(e) .......................................................... 8, 17, 19

Tex. Util. Code § 39.151(d) .............................................................. *passim*

Tex. Util. Code § 39.151(g-6) .......................................................... 22, 23

Act of May 30, 2021, 87th Leg., R.S., ch. 426, § 3, 2021 Tex. Gen. Laws 830, 831, *amended by* Act of May 28, 2023, 88th Leg., R.S., H.B. 1500, § 15 ................................................ 22, 23

## INTRODUCTION[1]

The trial court erred by concluding it lacked jurisdiction to consider Aspire's challenge to the ECRS Rules that were adopted by ERCOT and, in later versions, approved by the PUC. It erred because

1. Aspire adequately pleaded a challenge to the validity of the ECRS Rules that falls within APA § 2001.038's waiver of sovereign immunity; and

2. Aspire adequately pleaded that the PUC Commissioners acted beyond their statutory authority—*ultra vires*—by allowing ERCOT to adopt ECRS Rules and by approving later versions.

The first question—whether APA § 2001.038's waiver of sovereign immunity applies—itself largely comes down to two issues on which the parties fundamentally disagree:

1. How the statutory language of PURA and the APA—in particular, PURA § 39.151(d) and APA §§ 2001.003(6) & 2001.038—is to be interpreted and applied; and

2. What the Texas Supreme Court actually decided, what it **held**, in *PUC v. RWE Renewables Americas, LLC*, 691 S.W.3d 484 (Tex. 2024).

On these issues, ERCOT and the PUC Parties refuse to acknowledge and deal "head-on," as they say, with the plain language of the statutes and of the Supreme Court's opinion in *RWE*.

---

[1] All short-form references in Appellant's opening Brief—like, PURA, PUC, and ECRS—are carried forward in this Reply.

For example, the Public Utility Regulatory Act, PURA, explicitly allowed the PUC to "delegate" certain rulemaking authority and "responsibilities" to ERCOT. Tex. Util. Code § 39.151(d). The parties agree that ERCOT adopted the ECRS Rules under this authority "delegated" from the PUC. The parties also do not dispute that if the PUC itself had adopted the ECRS Rules, the PUC would have had to follow the requirements of Texas's Administrative Procedure Act. Therefore, based on the plain language of PURA, Aspire's challenge to the ECRS Rules—alleging failure to comply with the APA—necessarily falls within APA § 2001.038's waiver of sovereign immunity for claims attacking the validity of such rules.

ERCOT and the PUC Parties nevertheless argue that ERCOT did not have to follow the APA when adopting the ECRS Rules. But they have not even tried to address the central statutory-interpretation question in this case: what did the Legislature require of ERCOT when it allowed the PUC to "delegate" its rulemaking "responsibilities" to ERCOT? Their position, implicitly, is that the PUC somehow gave ERCOT the *power* to make rules while leaving ERCOT free to disregard APA *requirements* that apply to the making of rules. This cannot be

squared with the meaning of the terms "delegate" and "responsibilities" or the larger statutory text.

Unable to explain how ERCOT can exercise rulemaking authority "delegated" from the PUC without also taking on the rulemaking requirements and "responsibilities" that apply to the PUC, ERCOT and the PUC assert that "the threshold jurisdictional question [in this case] has already been answered in the Texas Supreme Court's recent decision in *RWE*." ERCOT Br. 16. *RWE*, however, addressed a jurisdictional question distinct, in meaningful ways, from the one here: whether a ***PUC order*** that ***approved*** an ERCOT-adopted rule could be challenged via direct appeal to the court of appeals. *See* Tex. Util. Code § 39.001(e) (authorizing such a direct appeal only for "competition rules adopted by the [PUC]"). Here, Aspire has challenged ERCOT's adoption of the ECRS Rules under APA § 2001.038, a provision not addressed in *RWE*, and has done so in the trial court rather than the court of appeals. Whether the trial court had jurisdiction in this case turns on the statutory interpretation question about "delegation" outlined above, not ERCOT's and the PUC's mishmash of quotations from *RWE*.

ERCOT's adoption of the ECRS Rules under authority delegated to it by the PUC under PURA § 39.151(d) is subject to the APA generally and § 2001.038 specifically. And that's true both before 2021, when the PUC delegated to ERCOT the authority to adopt and put such rules into effect on its own, and after the 2021 amendments to PURA under which rules "adopted" by ERCOT did not take effect until they were "approved" by the PUC. *RWE* does not hold to the contrary. And so the trial court's orders dismissing Aspire's challenge for lack of jurisdiction should be reversed.

Aspire's *ultra vires* allegations further support the trial court's jurisdiction. Because there is no dispute that sovereign immunity does not apply to claims of *ultra vires* conduct, the second question—whether the *ultra vires* exception to sovereign immunity applies—distills to the adequacy of Aspire's pleadings on that issue. The parties have extensively discussed that question in their initial briefs. But ERCOT's and the PUC Parties' positions on this front ignore the first principles of statutory construction, including that the Court must give effect to all parts of the statute. Only Aspire's construction does that. And so, for

this additional reason, the district court had jurisdiction to decide

Aspire's claims.

**ARGUMENT**

**I.    The ECRS Rules are "rules" governed by the APA.**

**A.    What makes a "rule" an "APA Rule"?**

APA § 2001.003(6) says a "rule" to which the APA applies

> (A) means a state agency statement of general applicability
> that: (i) implements, interprets, or prescribes law or policy;
> or (ii) describes the procedure or practice requirements of
> a state agency; (B) includes the amendment or repeal of a prior
> rule; and (C) does not include a statement regarding only the
> internal management or organization of a state agency and not
> affecting private rights or procedures.

APA § 2001.003(7) says that a

> "State agency" means a state officer, board, commission, or
> department with statewide jurisdiction that makes rules or
> determines contested cases.

**B.    "Rules" adopted by the PUC on its own are "APA Rules," and that would include the ECRS Rules if the PUC itself had adopted them.**

In its Appellee's Brief, the PUC acknowledged that, "When the

PUC adopts its own rules, it follows APA procedures." PUC Br. 21.

Aspire demonstrated in its Appellant's Brief that, if the PUC on its own

had formulated and "adopted" the ECRS Rules, those rules and that

process would have been subject to the APA. Appellant's Br. 40-42 (and

10

authorities cited there). Neither ERCOT nor the PUC Parties disputed

that in their Appellees' Briefs. Rightly so, because,

- The PUC undeniably is a "state agency" under the APA. Appellant's Br. 41. And

- The ECRS Rules are "statement[s] of general applicability that: (i) implement[], interpret[], or prescribe[] law or policy ...." *Id.* 41, 45 n.14 (quoting APA § 2001.003(6)).

Neither ERCOT nor the PUC Parties disputed either of those premises,

either.

**C.** **The dispositive statutory language of PURA: the PUC "delegate[d]" part of its rulemaking authority and "responsibilities" to ERCOT, necessarily making ERCOT's procedure for adopting the ECRS Rules subject to and reviewable under the APA, just as if the PUC itself had adopted them.**

**1.** **ERCOT has no rulemaking authority of its own.**

ERCOT and the PUC Parties argue, however, that ERCOT, which

"adopted" the ECRS Rules, is not a "state agency." ERCOT Br. 41; PUC

Br. 4. But that is immaterial.[2]

ERCOT has no rulemaking authority of its own. When it adopted

the ECRS Rules, it did so pursuant to "rulemaking authority ***delegated***

to it by the PUC, as authorized by PURA." *RWE*, at 486 (citing PURA

---

[2] ERCOT and the PUC Parties contend there is no dispute that ERCOT is not a "state agency" for APA purposes. ERCOT Br. 41; PUC Br. 4. Aspire does not concede that point; but, as explained in text, it doesn't matter.

11

§ 39.151(d), (g-6) (emphasis added)).[3] In PURA § 39.151(d), the Legislature intentionally chose to provide that the PUC could decide to exercise rulemaking authority on its own, or "***delegate*** those ***responsibilities*** to an independent organization" like ERCOT. (Emphasis added.)[4]

The Legislature could have chosen to imbue an organization certified by PUC (like ERCOT) with direct rulemaking authority on its own. Instead, it chose only to allow the PUC to "delegate" part of its

[3] The Supreme Court's unambiguous statement in *RWE* that the PUC "delegated" its own "rulemaking authority" to ERCOT creates a problem for ERCOT's position. Recognizing this, ERCOT argues that it is "not an admission or acknowledgment that [ERCOT] Protocols constitute APA rules" because the Supreme Court "has previously referred to non-APA rules as 'rules.'" ERCOT Br. 25 n.40. For this, it cites *RR Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003). But *WBD* just reinforces the fact that the ECRS Rules at issue here are "APA rules." *WBD* dealt with "field rules [formulated] using contested case procedures rather than rulemaking procedures." *Id.* at 74-80. "Field rules," the Court explained, are not rules of "general applicability." *Id.* at 79. The ECRS Rules, by contrast, both (i) are rules of "general applicability" and (ii) were established by "rulemaking procedures"—however flawed and defective—not "using contested case procedures" of APA § 2001.051-.903. Unlike the "field rules" in *WBD*, therefore, the ECRS Rules are "APA rules."

[4] "The commission shall adopt and enforce rules relating to the reliability of the regional electrical network …, or may delegate those responsibilities to an independent organization." Tex. Util. Code § 39.151(d). As explained in Aspire's opening brief, however, the PUC's ability to delegate rulemaking authority did not include allowing ERCOT to establish a new Ancillary Service, like ECRS, in the first instance. Appellant's Br. 60-64. But to the extent the Court finds the PUC had such ability to delegate, the delegation could not be stripped of the requirement to comply with the APA. PURA contains no statutory expression that, in allowing the PUC the option to delegate rulemaking authority, the Legislature intended to exempt the delegee-organization from the procedural requirements that apply to rulemaking.

12

own rulemaking authority to ERCOT, along with the PUC's "responsibilities" in that rulemaking process. Tex. Util. Code § 39.151(d). And just as the Supreme Court in *RWE* accorded dispositive deference to the Legislature's choice of the words "adopt" and "approve" regarding the functions of ERCOT and the PUC, so also must courts similarly accord that same deference and significance to the Legislature's choice of the words "delegate" and "responsibilities" in PURA § 39.151(d).

### 2. ERCOT's adoption of the ECRS Rules through the authority and with the responsibilities delegated to it by the PUC is subject to the APA.

What "responsibilities" would the PUC have had if it had promulgated the ECRS Rules on its own, rather than "delegating" them to ERCOT? As shown above, and as acknowledged by the PUC itself, it would have had to "follow[] APA procedures." *See* PUC Br. 21.

As Aspire explained in its opening brief, if an agency is subject to limitations on its rulemaking authority and processes, it cannot "delegate" authority to another entity that is free from those limitations. Appellant's Br. 44-51 (and authorities discussed there). This is inherent in the concept of delegation. The delegee organization—

13

here, ERCOT—necessarily "stands in the shoes" of its delegor—here, the PUC—subject to all the same constraints and required to shoulder all the same responsibilities as its delegor. *Id.* (quoting *City of Garland v. Byrd*, 97 S.W.3d 601, 606 (Tex. App.—Dallas 2002, pet. denied)). In this case, that means ERCOT's exercise of "rulemaking authority delegated to it by the PUC, as authorized by PURA" in adopting the ECRS Rules—*see RWE*, 691 S.W.3d at 486—is subject to the APA, just as the PUC would have been had it adopted those roles on its own, rather than "delegating" that task, those "responsibilities," and that authority to ERCOT.

ERCOT and the PUC Parties object that the authorities cited by Aspire for this proposition do not involve APA rulemaking. Aspire's lead case, however, *Lindsay v. Sterling*, is a case involving substantially similar issues under APTRA, Texas's immediate precursor to the current APA. 690 S.W.2d 560, 561-62 (Tex. 1985).

But more fundamentally, the Appellees' arguments fail to grasp that the "stands-in-the-shoes" principle Aspire sets forth is a legal principle of general applicability to which the APA is no exception. It's simply inherent in the entire concept of what it means to delegate. For

14

example, the State of Texas is currently asserting essentially the same general principle in its effort to overturn the ban imposed by the State Fair of Texas ("SFOT") against patrons carrying guns into the Fair. *See generally* State's Motion for Summary Judgment, *State v. City of Dallas*, No. DC-24-14434 (298th District Court, Dallas County, Texas) (excerpt attached at Appx. Tab D).

The City of Dallas, which owns Fair Park, is prevented by statute from imposing a gun ban on city property like Fair Park. *See* Tex. Gov't Code § 411.209(a). SFOT leases much of Fair Park from the City for a few weeks each year, to host the annual State Fair. But SFOT is a private organization, to which that statute does not apply. The State argues, nevertheless—*through the same Attorney General's office that represents the PUC Parties here*—that,

> The City, SFOT's lessor, who was constrained by [statute] from excluding [gun] license holders from Fair Park, ***could not grant greater rights to the SFOT than the rights it itself held***. Because the City, the lessor, had no right to exclude license holders, it had no such rights to convey to the SFOT, its lessee. … SFOT can only take the rights that the City possesses and can convey.

State's MSJ at 20, 22 (Appx. Tab D) (emphasis added).

15

Because the PUC undisputedly would have been subject to the APA had it adopted the ECRS Rules itself, it could not "delegate" to ERCOT the ability to adopt those rules without complying with the "responsibilities" imposed by the APA—i.e., an authority greater, and less constrained, than the authority the PUC itself had. ERCOT's adoption of the ECRS Rules, therefore, was subject to the APA.

## II.     The Supreme Court's opinion in *RWE* did not resolve the jurisdictional question at issue here.

Just as ERCOT and the PUC Parties refused to deal head-on with the express "delegation" and "responsibilities" language of the implementing statute, so also do they refuse to acknowledge what the Supreme Court actually held in *RWE* and what the narrow issue actually was in that case.

> ERCOT argues that
>
> [T]he only question in this appeal is whether the ERCOT Protocols [specifically, the ECRS Rules] constitute APA "rules" falling within APA § 2001.038's limited immunity waiver.
>
> The Texas Supreme Court has already answered this question: under the plain text of the APA and ERCOT's "governing statutory authority"—PURA—the Protocols are *not* APA "rules."

ERCOT Br. 23 (emphasis original, citing *RWE*, 691 S.W.3d at 491-92).

16

But that's not what *RWE* holds. Nor is that surprising, because "whether the ERCOT Protocols [the ECRS Rules in particular] constitute APA 'rules' falling within APA § 2001.038's limited immunity waiver" was not the issue before the Supreme Court in that case. In short, *RWE* did not and could not decide the jurisdictional issues presented to this Court here because those were not the issues faced by the Supreme Court in *RWE*.

A. **The Supreme Court in *RWE* ruled only on the direct appealability to a court of appeals of the PUC's order *approving* protocols adopted by ERCOT.**

*First*, two fundamental points:

- *RWE* did not involve or address the ERCOT Protocols at issue in this case, the ECRS rules. *See RWE*, 691 S.W.3d at 485, 487.

- *RWE* didn't involve or even mention APA § 2001.038, the statute that provides a waiver of sovereign immunity and therefore, in part, jurisdiction for Aspire's claims in this case. Instead, *RWE* focused on whether there was jurisdiction under PURA § 39.001(e) for a direct appeal to the court of appeals for review of an alleged "competition rule[] adopted by the commission [the PUC]." *RWE*, 691 S.W.3d at 485-86, 492 (first bracket original).

Neither ERCOT nor the PUC Parties argue to the contrary on these basic issues.

*Second*, and perhaps most important, the Supreme Court in *RWE* did not decide whether ERCOT protocols were subject to and reviewable

17

under the APA, because those protocols themselves were not on appeal or at issue in *RWE*—a case in which ERCOT was not even a party. Instead, the Supreme Court had to resolve only the reviewability by direct appeal of the **PUC's order** *approving* protocols that had been *adopted* by ERCOT—because it was the PUC **order** that *RWE* appealed. That was the unambiguous focus of the Supreme Court's holding.

In both its Petition for Review and Brief on the Merits, the PUC itself framed the issue before the Supreme Court as:

- "Whether the [PUC approval] **Order**, which amended the [ERCOT] Nodal Protocols, is itself a competition rule adopted by the Commission." PUC Petition for Review at vii, *PUC v. RWE Renewables Americas, LLC*, No. 23-0555 (Tex.) (emphasis added) (excerpt attached at Appx. Tab A).

- "Whether the [PUC approval] **Order**, which amended the [ERCOT] Nodal Protocols, is a competition rule promulgated by the Commission." PUC Brief on the Merits at xii, *PUC v. RWE Renewables Americas, LLC*, RR No. 23-0555 (Tex.) (emphasis added) (excerpt attached at Appx. Tab B).[5]

---

[5] Similarly, in its opening brief in the Court of Appeals, the PUC framed the issue as, "Does the Court lack jurisdiction because **the Commission's order approving** ERCOT's protocol revision is not an electric competition rule that may be challenged by direct appeal to this Court?" PUC Br. at xiii, *RWE Renewables Americas, LLC v. PUC*, No. 03-21-00356-CV (Tex. App.—Austin) (emphasis added) (excerpt attached at Appx. Tab C).

The Supreme Court itself then repeatedly acknowledged throughout its opinion in *RWE*, and especially in its holding, that the matter at issue—i.e., the jurisdictional issue it was deciding—was the reviewability by direct appeal of the PUC approval order alone, not the ERCOT protocols or the process by which those protocols were "adopted":

- "We first consider whether, in light of the amendments to PURA requiring PUC approval of ERCOT protocols, *the approval order* constitutes a 'competition rule[ ] adopted by the commission.' *Id.* If it does not, the court of appeals lacked jurisdiction …." *RWE* , 691 S.W.3d at 485 (emphasis added).

- "We *hold* that *the PUC's approval order* is not a 'competition rule[ ] adopted by the commission' subject to the judicial-review process for PUC rules." *Id.* 486 (emphasis added).

- "[T]he statutory requirement that the PUC approve those adopted protocols does not transform *PUC approval orders* into PUC rules eligible for direct review by a court of appeals." *Id.* (emphasis added).

- "RWE … sought judicial review of *the PUC's order* by the Third Court of Appeals." *Id.* at 488 (emphasis added).

- "The court of appeals held that *the PUC's order* constituted a 'competition rule adopted by the commission' under Section 39.001(e), giving the court jurisdiction over the proceedings." *Id.* (emphasis added).

- "The PUC challenges the court of appeals' subject matter jurisdiction over what is essentially a direct appeal of *the PUC's order*." *Id.* (emphasis added).

- "The PUC argues that ***its order approving*** NPRR 1081 is not a rule at all, much less a 'competition rule,' and that PURA thus does not authorize direct review of ***the order*** by the court of appeals." *Id.* at 489 (emphasis added).

- "In sum, … we ***hold*** that ***the PUC's order*** approving NPRR 1081 was a ratification decision that simply allowed protocol revisions, already developed and adopted by ERCOT in accordance with its own detailed procedures, to take effect. Consequently, ***the PUC's order*** was not an agency-adopted 'rule' under the Administrative Procedure Act." *Id.* at 492 (emphasis added).

- "Having concluded that the court of appeals lacked jurisdiction over RWE's appeal of ***the PUC's approval order***, we need not address RWE's remaining arguments." *Id.* (emphasis added).

- "Because ***the PUC's order*** was not a 'competition rule adopted by the commission' under PURA, Section 39.151 did not confer direct-review jurisdiction on the court of appeals." *Id.* (emphasis added).

Defendants argue repeatedly that the Court in *RWE* ruled on the ERCOT protocol procedure. Specifically, they note the Court (1) observed that ERCOT and the PUC are "joint participants in a complex regulatory scheme—each serving its own distinct and essential purpose," and (2) rejected the idea that "by amending PURA to require formal PUC approval of ERCOT-adopted protocols at the tail end of the process, the Legislature intended to overhaul that process entirely and effectively convert ERCOT protocols into PUC rules …." *Id.* at 490-91. The *RWE* opinion does say those things. But it does so in support of its

20

extensive and detailed analysis distinguishing between ERCOT's role in *adopting* protocols and the PUC's role in *approving* or ratifying them, after the 2021 amendments to PURA. The entire point of the Supreme Court's analysis is that the ***PUC's*** *approval* order—the only order or purported "rule" before it—does not "*adopt*" the protocols, thereby making them "rules" under APA § 2001.003(6). *See RWE*, 691 S.W.3d at 491-92. Nowhere does the Court say in *RWE* that ERCOT protocols themselves—"adopted" under rulemaking authority delegated to ERCOT by the state agency, PUC—are not rules subject to challenge under APA § 2001.038, either on their own or after approval by the PUC as part of the integrated post-2021 process by which those protocols are promulgated and then made effective.[6]

### B. *RWE* did not involve or address the situation at issue here: pre-2021 protocols adopted and made effective by ERCOT alone, through authority delegated by the PUC.

Finally, one other major difference undercuts Appellees' misplaced reliance on *RWE*. As shown above, the Texas Supreme Court in *RWE*

---

[6] ERCOT identifies places in the *RWE* briefing where the parties discussed the combined rulemaking activity of ERCOT and the PUC. *See, e.g.*, ERCOT Br. 32-36. Missing, however, is any reference to the Supreme Court's having accepted, rejected, or otherwise issued a holding regarding any of those arguments in its *RWE* opinion—because the Court didn't do so.

was asked to decide only whether the PUC order *approving* ERCOT protocols was a "competition rule" subject to direct appellate review—a review that included the subsidiary question whether that order was a "rule" at all. But Aspire's claims also challenge, in part, ERCOT's original adoption of the ECRS Rules that took place in 2019, before PUC approval was required for them to go into effect.[7] Tex. Util. Code § 39.151(g-6); *see* Act of May 30, 2021, 87th Leg., R.S., ch. 426, § 3, 2021 Tex. Gen. Laws 830, 831, *amended by* Act of May 28, 2023, 88th Leg., R.S., H.B. 1500, § 15 (adding requirement of PUC approval order before ERCOT protocols take effect).

The entire basis upon for the *RWE* Court's ruling that the PUC order was not a "rule"—i.e., that the PUC order merely "approved" ERCOT protocols, rather than "adopting" them as specified in APA § 2001.003(6)—is missing with respect to Aspire's challenge to the pre-2021 ECRS Rules. Those were "adopted" by ERCOT alone, without a PUC order of approval. If anything, the *RWE* Court's focus on

---

[7] Aspire's challenge is not barred by limitations, which does not begin to run until the "rule" in question has been published in the Texas Register, APA §§ 2001.035(b), .036 (APA complaint must be filed within two years of filing in Texas Register)—something that has not happened here. Further, limitations is not a jurisdictional issue in any event. *See, e.g., City of New Braunfels v. Allen*, 132 S.W.3d 157, 167 (Tex. App.—Austin 2004, no pet.).

"adoption" strengthens Aspire's contention that pre-2021 ECRS protocols "adopted" and made effective by ERCOT under authority delegated by the PUC—e.g., the ECRS Rules by which ECRS was first created—are in fact "APA rules" subject to challenge and review under § 2001.038.

This conclusion is bolstered by another aspect of the Legislature's 2021 amendments to PURA. Those amendments required ERCOT to, among other things, "establish and implement a formal process for adopting new protocols or revisions to existing protocols." Act of May 30, 2021, 87th Leg., R.S., ch. 426, § 3, 2021 Tex. Gen. Laws 830, 831 (amended 2023) (codified at Tex. Util. Code § 39.151(g-6)). This is far from a clear signal from the Legislature that ERCOT was to be exempt from the APA's requirements thereafter. *See* Appellant's Br. at 55-59. To the contrary, it strongly suggests the Legislature understood ERCOT's pre-amendment rulemaking *did* have to comply with the APA. Put differently, at the time ERCOT first made the rules creating ECRS in 2019, PURA authorized the PUC to delegate its entire rulemaking authority to ERCOT, without a word about how ERCOT should exercise this delegated authority. No party disputes that if PUC

had made the rules first creating ECRS, it would have had to follow the APA. So, when ERCOT exercised PUC-delegated rulemaking power in 2019—with PURA silent at the time about ERCOT's own rulemaking procedures—the only plausible interpretation is that ERCOT also had to comply with the APA when it created ECRS.

### III. Aspire was not required to exhaust administrative remedies before bringing its claims to the Travis County District Court.

ERCOT and the PUC Parties also contend that, even if jurisdiction otherwise existed for Aspire to pursue its claims in court, it was required to exhaust all potential administrative procedures and remedies before doing so. ERCOT Br. 44-47; PUC Br. 22-26.

But, as Aspire explained in its opening brief, if the ECRS Rules are rules subject to the APA, as Aspire contends and has demonstrated above, then APA § 2001.038(d) expressly excuses Aspire from bringing its complaints to ERCOT or the PUC before filing suit. Appellant's Br. 59-60 (citing, e.g., *Tex. Tel. Ass'n v. PUC*, 653 S.W.3d 227, 264 n.17 (Tex. App.—Austin 2022, no pet.)). In fact, that statute provides that such claims "may be brought only in a Travis County district court," as Aspire did here, and not before an administrative agency like the PUC.

APA § 2001.038(b). The administrative remedies and procedures touted by Appellees, therefore, do not preempt and are not prerequisite to a challenge in district court like that mounted by Aspire.

## IV. Aspire's *ultra vires* allegations state a claim sufficient to establish jurisdiction.

As with their APA arguments, ERCOT and the PUC Parties ignore first principles of statutory construction with respect to Aspire's *ultra vires* claims. Every portion of a statute must be given effect. Tex. Gov't Code § 311.021. When the Court of Appeals construes a statute, it presumes the entire statute is intended to be effective, and that the Legislature enacted it with complete knowledge of the existing law and with reference to it. *Burnett v. Lunceford*, 545 S.W.3d 587, 591 (Tex.App.—El Paso 2016, pet. denied) (citing *Texas Mutual Insurance Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012)). "Further, [the court] will presume that the Legislature deliberately and purposefully selected words and phrases it enacts, as well as deliberately and purposefully omitted those words and phrases it does not enact." *Id*.

ERCOT fails to deal directly with Aspire's argument that PURA § 35.004(e) requires the PUC to establish any new Ancillary Service by rule in the first instance. ERCOT Br. at 53-54. It points to 2021

25

legislation that allows ERCOT to "periodically determine[] the *quantity and characteristics* **of ancillary** *or* **reliability services necessary to ensure appropriate reliability during extreme heat and extreme cold** …." *Id.* at 53 (citing PURA § 39.159(b) (bold in ERCOT Brief; italics added)). It further argues that ERCOT has the power to procure services on a competitive basis and to develop qualification and performance requirements for providing services. *Id.* at 54. Rather than support its position, however, ERCOT's excerpts demonstrate two things:

- Ancillary and reliability services are not the same thing, as evidenced by the Legislature's use of the word "or"; and

- ERCOT is delegated a number of powers over such services, but not the ability to establish them in the first instance.

PURA § 39.159. And the sections ERCOT cites were added in 2021 and 2023, long after ECRS was originally implemented.

ERCOT's statutory construction cannot be squared with the actual text of the statutes. Aspire has adequately pleaded a claim that the Commissioners acted *ultra vires* by allowing ERCOT to establish ECRS in 2019. For this additional reason, therefore, sovereign immunity does not bar jurisdiction in the district court.

## V. The sky will not fall if ERCOT's ECRS Rules are subjected to the APA and APA review.

Finally, Appellees—ERCOT in particular—repeatedly warn of a parade of horribles that will befall Texas and the electricity grid if the trial court's orders dismissing Aspire's claims are not affirmed, e.g.:

- Aspire "seeks to do away with the entire ERCOT market rulebook." ERCOT Br. 16.

- *The* relief Aspire seeks "will cripple ERCOT's statutory responsibility to 'ensure the reliability' of the grid." *Id.* at 20.

- Aspire's arguments would mean that "all Ancillary Services are illegal under PURA." *Id.* at 21, 63.

But ERCOT's and the PUC's concerns are overblown if not misplaced entirely.

*First*, the question now before the Court is only whether the trial court has jurisdiction to entertain Aspire's claims—not whether Aspire's claims will be sustained, or what the scope of any relief will be. *Second*, ERCOT and the PUC are just wrong to suggest the Nodal Protocol system cannot operate in the light of day and with the public scrutiny and participation provided for by application of the APA. Nothing about the procedures mandated by the APA—like providing notice, allowing for public comment, and articulating and publishing a reasoned justification for a rule—would prevent ERCOT or the PUC from doing

27

their jobs when developing rules governing the electricity market. *See RWE*, 691 S.W.3d at 487, 489-90; Tex. Gov't Code §§ 2001.023-.024, .029, .033. ERCOT could still use its "technical expertise" and "detailed procedures," including review by stakeholder committees and requirements for staff-prepared analyses. *RWE*, 691 S.W.3d at 487, 489-90. Even emergency situations are addressed in the APA. *See* Tex. Gov't Code § 2001.034. ERCOT and the PUC would simply have to adhere to the "minimum standards" the Legislature has set for all rulemaking in this State.

Finally, even if some significant procedural or systemic change were eventually to be required by Aspire's claims, there will be no immediate, cataclysmic event that "cripples" ERCOT, the grid, or the PUC. The APA itself provides a safeguard against such concerns:

> If a court finds that an agency has not substantially complied with one or more procedural requirements of Sections 2001.0225 through 2001.034, the court may remand the rule, or a portion of the rule, to the agency and, if it does so remand, shall provide a reasonable time for the agency to either revise or readopt the rule through established procedure. **During the remand period, the rule shall remain effective unless the court finds good cause to invalidate the rule or a portion of the rule, effective as of the date of the court's order.**"

APA § 2001.040 (emphasis added).[8] In other words, the APA allows for a controlled demolition of a rule if it was adopted in violation of the APA, rather than requiring the court to immediately blow it up.

## CONCLUSION & PRAYER FOR RELIEF

As demonstrated above, the trial court does have jurisdiction over Aspire's claims challenging the validity of the ECRS Rules and the conduct of ERCOT and the PUC and its Commissioners in promulgating them. Aspire therefore respectfully prays that this Court reverse the trial court's orders granting the Amended Pleas to the Jurisdiction filed by ERCOT and the PUC Parties, and remand to the trial court with instructions that it adjudicate Aspire's claims on the merits.

---

[8] Appellees' "sky-is-falling" arguments as a whole are not pertinent to the jurisdictional analysis on this appeal, which is limited to the pleadings. Those are arguments ERCOT and the PUC undoubtedly would make if and when the trial court prepares to fashion a remedy on Aspire's claims, including Aspire's request for injunctive relief.

Respectfully submitted,

*/s/ Chrysta L. Castañeda*

Chrysta L. Castañeda
  Texas Bar No. 15325625
  chrysta@castaneda-firm.com
Nicole Michael
  Texas Bar No. 24067767
  nicole@castaneda-firm.com
THE CASTAÑEDA FIRM
325 N. St. Paul, Suite 2030
Dallas, Texas 75201
Phone: (214) 282-8579
Fax: (214) 602-9187

Monica Latin
  Texas Bar No. 00787881
  MLatin@ccsb.com
Brent M. Rubin
  Texas Bar No. 24086834
  BRubin@ccsb.com
Ken Carroll
  Texas Bar No. 03888500
  KCarroll@ccsb.com
CARRINGTON, COLEMAN,
  SLOMAN & BLUMENTHAL, L.L.P.
901 Main Street, Suite 5500
Dallas, Texas 75202
Phone: (214) 855-3000
Fax: (214) 580-2641

*Attorneys for Appellant Aspire Power Ventures, LP*

## CERTIFICATE OF COMPLIANCE

I certify pursuant to Tex. R. App. P. 9.4(i)(3) that this document complies with the length limitations of Rule 9.4(i) and the typeface requirements of Rule 9.4(e).

1. Exclusive of the contents identified by Rule 9.4(i)(1) and inclusive of all textboxes, footnotes, and endnotes, this document contains 5,286 words as counted by the Word Count function of Microsoft Word 2010.

2. This document has been prepared in proportionally spaced typeface using:

Software Name and Version: Microsoft Word 2010

Typeface Name: Century Schoolbook

Font Size: 14-point in text; 12-point in footnotes

*/s/ Ken Carroll*
Ken Carroll

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of March, 2025, a true and correct copy of the foregoing Appellee's Reply Brief has been served via the authorized electronic filing system on counsel of record for Appellees:

John R. Hulme
  John.Hulme@oag.texas.gov
Amanda Atkinson Cagle
  Amanda.Cagle@oag.texas.gov
Jordan Pratt
  Jordan.Pratt@oag.texas.gov
Environmental Protection Division
Office of the Attorney General
P.O. Box 12548, MC-066
Austin, TX 78711-2548

*Counsel for Appellees the Public Utilities Commission of Texas and its Chairman and Commissioners*

Elliot Clark
  eclark@winstead.com
Elin Isenhower
  eisenhower@winstead.com
WINSTEAD PC
600 W. 5th Street, Suite 900
Austin, TX 78701

*Counsel for Appellee ERCOT*

*/s/ Ken Carroll*
Ken Carroll

No. 15-24-00118-CV

COURT OF APPEALS FOR THE
FIFTEENTH DISTRICT OF TEXAS
AUSTIN, TEXAS

Aspire Power Ventures, LP,

*Appellant,*

v.

Public Utility Commission of Texas, Electric Reliability Council
of Texas, Thomas Gleeson, Lori Cobos, Jimmy Glotfelty,
Kathleen Jackson, and Courtney Hjaltman,

*Appellees.*

On Appeal from the 345th Judicial District Court
Travis County, Texas
Cause No. D-1-GN-24-003384
*Hon. Catherine A. Mauzy, Presiding*

TEX. R. APP. P. 38.1(k)
APPENDIX TO APPELLANT'S REPLY BRIEF

Tab A:     PUC Petition for Review, *PUC v. RWE Renewables
           Americas, LLC*, No. 23-0555 (Tex.) (excerpt)

Tab B:     PUC Brief on the Merits, *PUC v. RWE Renewables Americas,
           LLC*, No. 23-0555 (Tex.) (excerpt)

Tab C:     PUC Brief, *RWE Renewables Americas, LLC v. PUC*, No. 03-
           21-00356-CV (Tex. App.—Austin) (excerpt)

Tab D:     State's Motion for Summary Judgment, *State v. City of
           Dallas*, No. DC-24-14434 (298th District Court, Dallas
           County, Texas) (excerpt)

# Tab A

FILED
23-0555
7/17/2023 11:14 AM
tex-77575775
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. _____

# In the Supreme Court of Texas

—

PUBLIC UTILITY COMMISSION OF TEXAS,
*Petitioner*,

*v.*

RWE RENEWABLES AMERICAS, LLC AND
TX HEREFORD WIND, LLC,
*Respondents.*

—

On Petition for Review
from the Third Court of Appeals, Austin

—

## PETITION FOR REVIEW

—

ANGELA COLMENERO
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

LANORA C. PETTIT
Principal Deputy Solicitor General
State Bar No. 24115221
Lanora.Pettit@oag.texas.gov

BILL DAVIS
Deputy Solicitor General

KYLE D. HIGHFUL
Assistant Solicitor General

Counsel for Petitioner

## ISSUES PRESENTED

The Legislature has empowered the Commission to delegate rulemaking to ERCOT, allowing ERCOT to adopt changes to its Nodal Protocols, which govern Texas's electricity market. But the Commission must approve protocol amendments before they become effective.

Here, ERCOT followed the process outlined in its protocols and adopted amendments to help ensure accurate market prices for electricity when load is being shed during an emergency. Respondent RWE participated in that process. The Commission then issued an order approving those amendments and allowing them to take effect. Rather than challenge the amendments through the avenues provided by the Nodal Protocols and Commission rules, Respondents purported to appeal the Commission's order directly to the Third Court of Appeals.

The issues presented are:

1. Whether the Order, which amended the Nodal Protocols, is itself a competition rule adopted by the Commission.

2. Assuming the Order was not a rule:

    a. Whether the court of appeals lacked jurisdiction under Texas Utilities Code section 39.001(e).

    b. Whether the court of appeals erred in holding that the Order is invalid because the Commission failed to follow rulemaking procedures required by the Administrative Procedure Act.

3. Whether the court of appeals erred in holding that the Order exceeded the Commission's authority under the Public Utility Regulatory Act.



FILED
23-0555
1/18/2024 5:58 PM
tex-83561788
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

**No. 23-0555**

# In the Supreme Court of Texas

Public Utility Commission of Texas,
*Petitioner,*

*v.*

RWE Renewables Americas, LLC and
TX Hereford Wind, LLC,
*Respondents.*

On Petition for Review
from the Third Court of Appeals, Austin

## BRIEF FOR PETITIONER

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Lanora C. Pettit
Principal Deputy Solicitor General
State Bar No. 24115221
Lanora.Pettit@oag.texas.gov

Bill Davis
Deputy Solicitor General

Kyle D. Highful
Assistant Solicitor General

Counsel for Petitioner

# ISSUES PRESENTED

The Legislature has empowered the Commission to delegate to ERCOT the authority to (among other things) set the rules for competition in the electricity market, subject to the Commission's approval. ERCOT has responded by adopting the Nodal Protocols, which govern Texas's electricity market.

Here, ERCOT followed the process outlined in its protocols and adopted amendments to help ensure accurate market prices for electricity when an emergency forces ERCOT to order "load shed" (*i.e.*, mandatory outages of consumer demand). The Commission then issued an order approving those amendments and allowing them to take effect. Rather than challenge the amendments through the avenues provided by the Nodal Protocols and Commission rules, Respondent RWE—who participated in the process before ERCOT—appealed the Commission's order directly to the Third Court of Appeals.

The issues presented are:

1. Whether the Order, which amended the Nodal Protocols, is a competition rule promulgated by the Commission.

2. Assuming the Order was not a rule, whether the court of appeals:

    a. lacked jurisdiction under Texas Utilities Code section 39.001(e); or

    b. erred in holding that the Order is invalid because the Commission failed to follow rulemaking procedures required by the Administrative Procedure Act ("APA").

3. Whether the court of appeals erred in holding that the Order exceeded the Commission's authority under the Public Utility Regulatory Act ("PURA").

# Tab C

ACCEPTED
03-21-00356-CV
65038255
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/1/2022 4:17 PM
JEFFREY D. KYLE
CLERK

## No. 03-21-00356-CV

### In the Court of Appeals
### for the Third Judicial District
### Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/1/2022 4:17:01 PM
JEFFREY D. KYLE
Clerk

RWE Renewables Americas, LLC, and
TX Hereford Wind, LLC,

*Appellants*,

*v.*

Public Utility Commission of Texas,

*Appellee.*

On Direct Appeal from the Public Utility Commission of Texas
PUC Project No. 52307

## BRIEF OF APPELLEE PUBLIC UTILITY COMMISSION OF TEXAS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil
Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division

June 1, 2022

JOHN R. HULME
Assistant Attorney General
State Bar No. 10258400
John.Hulme@oag.texas.gov

ASHTON L. MURPHY
Assistant Attorney General
State Bar No. 24117207
Ashton.Murphy@oag.texas.gov

Office of the Attorney General of Texas
Environmental Protection Division
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 475-4229
(512) 320-0911 (fax)

ATTORNEYS FOR THE PUBLIC
UTILITY COMMISSION OF TEXAS

**ORAL ARGUMENT CONDITIONALLY REQUESTED**

## ISSUES PRESENTED

1.  Does the Court lack jurisdiction because the Commission's order approving ERCOT's protocol revision is not an electric competition rule that may be challenged by direct appeal to this Court?

2.  Was a formal Administrative Procedure Act ("APA") rulemaking required to implement the Legislature's directive that the Commission review ERCOT's protocol revision, that was developed through a process at ERCOT involving interested stakeholders, when the Legislature did not mandate APA rulemaking and the Commission simply applied its own existing policy in granting the approval? (Responds to Issue No. 2)

3.  Was the Commission's order consistent with the statutory standards for its oversight of the competitive wholesale electric market and its Legislative mandate to protect system reliability? (Responds to Issue No. 1)



**Tab D**

FILED
11/20/2024 2:02 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Nicole Burroughs DEPUTY

CAUSE NO. DC-24-14434

| | | |
|---|---|---|
| **STATE OF TEXAS,** **MAXX JUUSOLA,** **TRACY MARTIN, and** **ALAN CRIDER,** | § § § § | IN THE DISTRICT COURT OF |
| *Plaintiffs,* | § § § | |
| v. | § § | DALLAS COUNTY, TEXAS |
| **CITY OF DALLAS,** **KIMBERLY BIZOR TOLBERT, in** **her official capacity as the Interim** **City Manager for the City of** **Dallas, and the** **STATE FAIR OF TEXAS,** | § § § § § § § § | |
| *Defendants.* | § | 298th JUDICIAL DISTRICT |

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE EMILY TOBOLOWSKY:

Pursuant to Texas Rule of Civil Procedure 166a, Plaintiffs move for summary judgment on all issues of liability, injunctive, and declaratory relief presented in their Third Amended Petition. This case was initiated after the State Fair of Texas ("SFOT") announced its policy excluding all law-abiding citizens from carrying handguns in the entirety of the government / public owned Fair Park. Granting this motion will leave only a calculation of civil penalties, attorneys fees, and costs to be imposed under Tex. Gov't Code § 411.209.

holder who is carrying a handgun under the authority of subchapter H, Chapter 411 of the Government Code is prohibited from entering or remaining on the premises of Fair Park except for specific portions of Fair Park where license holders are prohibited from carrying a handgun by section 46.03, Penal Code, or other law.

### b) The City has taken actions through its lease and statements to imply license holders carrying handguns are excluded from Fair Park.

It is undisputed that the City has made statements that license holders carrying handguns may be excluded from Fair Park. (R.R. Vol 1 146 : 8–12). As noted above, the City's legal position is that the City's conduct does not constitute, as a legal matter, that it "acted" in any way such that it could be liable under section 411.209; and rather, that only SFOT, its lessee and a private actor, has "acted." (see R.R. Vol 1 State's Exh. 20 – State of Texas 000581 at "A. Historic Background"). This is not accurate. The City has acted implicitly to exclude license holders carrying handguns from Fair Park in three principal ways: (1) its unlawful grant of authority to prohibit license holders carrying guns through the FPC, (2) its tacit endorsement of SFOT's ability to prohibit those protected individuals, and (3) its deliberate inaction to protect the rights of license holders.

### i. The City has acted through the FPC to implicitly exclude license holders carrying handguns from Fair Park.

As established above, the City may not take *any* action that states or *implies* that license holders carrying handguns are excluded from Fair Park. Tex. Gov't Code § 411.209. Yet, even so, the City has implicitly acted through its provision of leasehold rights to SFOT to the extent SFOT is relying on the FPC to enact its policy.

The City entered into the FPC with the SFOT, granting the SFOT certain property rights over Fair Park. (see R.R. Vol 1 City's Exh. 1, pg. 7 (5.01 Use by the State Fair)). Now, in turn, the SFOT is unlawfully relying on the FPC as the basis for effectuating its ban of all handguns at Fair Park, contrary to section 411.209. (R.R. Vol 1 127:2-8).

SFOT's attempt to evade the requirements of section 411.209 and to exclude license holders carrying firearms from Fair Park, something the City was forbidden from doing under section 411.209 before the FPC, has no legally supportable basis. SFOT may not exclude patrons carrying handguns from the fair because SFOT's rights as a tenant under the FPC are limited by the same statutory constraints that limited the City's right to prohibit imposed by section 411.209. The City, SFOT's lessor, who was constrained by section 411.209 from excluding license holders from Fair Park, could not grant greater rights to the SFOT than the rights it itself held. Because the City, the lessor, had no right to exclude license holders, it had no such rights to convey to the SFOT, its lessee.

Under Texas property law, a deed can pass no greater estate than that owned by the grantor. *Cockrell v. Tex Gulf Sulphur Co.*, 157 Tex. 10, 299 S.W.2d 672, 675 (Tex. 1956). In addition, a lease cannot grant a lessee a greater estate or right than is owned by the lessor. *Geary v. Two Bow Ranch Ltd. Partnership,* No. 04-18-00610-CV*, 2020*, Tex. App. Lexis 552, at *25 (Tex. App.—San Antonio 2020, pet. denied). The City was prohibited from excluding license holders carrying handguns under section 411.209. The City's estate and rights did not include the right to prohibit or

exclude, so the City lacked those rights to convey to the SFOT. SFOT's claim that its rights are broader than those of its lessor, the City, and include the right to prohibit or exclude, fails to recognize that the FPC conveyed no such rights to prohibit or exclude.

A property owner's rights are often described as a bundle of rights, or a bundle of sticks. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 48 (Tex. 2017). And an owner of realty has the right to exclude all others from the use of the property, one of the most essential sticks in the bundle of rights that are commonly characterized as property. *Id.* (quoting *Severance v. Patterson*, 370 S.W.3d 705, 709 (Tex. 2012) (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 384, 393 (1994)). But the right to exclude is both dictated and circumscribed by the scope of an owner's rights in the property, *Lightning Oil Co.,* 520 S.W.3d at 49, and by applicable state law. "[P]roperty does not refer to a thing but rather to the rights between a person and a thing." *Id.* (quoting *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 382–83 (Tex. 2012))*; Jim Olive Photography v. University of Houston, 624 S.W.3d 764, 773* (Tex. 2021). The Texas Supreme Court recognizes these limitations in many areas:

> "Limitations on property rights may be by consent of the owner, state condemnation with payment of just compensation, appropriate government action under its police power (such as addressing nuisances), sufficient proof of use by persons other than the owner that creates an estoppel-based right to continuing use (easements) or pre-existing limitations in the rights of real property owners that have existed 'since time immemorial.'"

*Severance*, 370 S.W.3d at 710. [4]

---

[4] The Texas Legislature has enacted various statutes governing the leasing and application of government land to entities in specific circumstances. Generally, the School Land Board and Land Commissioner hold the authority necessary to manage the lease of public school land, but this

Here, the limitation of the City's right to prohibit or exclude circumscribes the estate the City possesses to convey. Thus, SFOT can only take the rights that the City possesses and can convey.

The Legislature has circumscribed the City's rights over its property through section 411.209. Initially, "a home rule city derives its power not from the Legislature but from Article XI, Section 5 of the Texas Constitution.... [I]t is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers." *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998) (quoting *Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex.1975)) (internal quotations omitted). But while a home rule city thus has all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter, Tex. Const. art. XI, § 5, these broad powers may be limited by statute when the Legislature's intention to do so appears with unmistakable clarity. *Proctor,* 972 S.W.2d at 733 (citing *Dallas Merchant's and Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–491 (Tex.1993); *City of Sweetwater v. Geron*, 380 S.W.2d 550, 552 (Tex.1964). The legislature retains ultimate authority over the policies governing leases of public lands. *Fitzgerald v. State*, 9 S.W. 150, 151–53 (Tex. 1888). Section 411.209 sets out the Legislature's intent with "unmistakable clarity" to restrict the

---

authority is subject to restrictions and limitations imposed by the Texas Constitution and state laws. *See* Tex. Nat. Res. Code § 51.012. Similarly, other government entities like the Texas Parks and Wildlife Department and the Texas Department of Criminal Justice are granted land leases under specific circumstances. *See* Tex. Parks & Wild. Code § 12.008(a), Tex. Nat. Res. Code § 34.011. Another common restriction involves leasing land within 2,500 feet of a military base, which requires the Land Commissioner or a designee to consult with military authorities to ensure the lease does not adversely affect the base's mission. *See* Tex. Nat. Res. Code § 51.011(b).

property rights of political subdivisions, which includes municipalities like the City, to the extent it concerns the rights of those licensed to carry.[5] Under section 411.209, the City does not have the right to exclude license holders carrying handguns from its property generally. Consequently, the City cannot convey such a right to its lessee, SFOT, and any attempt to convey such a right would be unlawful and void. *See Extraction Res., Inc. v. Freeman,* 555 S.W.2d 156, 159 (Tex. App.—El Paso 1977, writ ref'd n.r.e.) ("It is elementary that one cannot convey what he does not own.") (subsequently citing *Cockrell v. Texas Gulf Sulfur Co.*, 157 Tex. 10, 299 S.W.2d 672 (1956)).[6]

Furthermore, the Texas Supreme Court has recognized that parties cannot circumvent public policy established by the Legislature concerning restrictions on property usage. In *Philadelphia Indemnity Ins. Co. v. White*, the Court affirmed that the Legislature has the power to create laws that limit, expand, or modify lease

---

[5] Certain political subdivisions attempted to restrict the breadth of Texans' firearm rights. *See* S. RESEARCH CTR., BILL ANALYSIS, Tex. S.B. 273, 84th Leg., R.S. (2015) (discussing "uncooperative governments [that] post signs to ban Texas citizens from carrying where it is legal"). The Legislature responded by prohibiting political subdivisions from frustrating the democratic premium placed on licensed possession, Act of May 23, 2015, 84th Leg., R.S., ch. 593, § 1, 2015 Tex. Gen. Laws 2000, 2000–01 (adding Government Code section 411.209)—resulting in categorical prohibition on "any action" that "states or implies" otherwise and subjecting violators to daily civil penalties, mandamus, and other equitable relief. Act of May 21, 2019, 86th Leg., R.S., ch. 784, § 1, 2019 Tex. Gen. Laws 2229, 2229–30 (amending Government Code section 411.209). To be sure, "any action[] includ[es] . . . the provision of notice . . . that a license holder who is carrying a handgun under the authority of this subchapter is prohibited from entering or remaining on a premises or other place owned . . . by the governmental entity," so long as license holders are not "prohibited from carrying . . . by section 46.03, Penal Code, or other law." Tex. Gov't Code § 411.209(a). Notably, a political subdivision that transgresses this command—either expressly or by implication—is subject to daily civil penalties, mandamus, and other equitable relief. *Id.* § 411.209(b)–(c), (g).

[6] "We take it that no authority need be cited for the proposition that a deed can pass no greater estate than that owned by the grantor. Likewise, it is fundamental that a warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed." *Cockrell*, 157 Tex. 10, 299 S.W.2d at 672.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ken Carroll on behalf of Ken Carroll
Bar No. 03888500
kcarroll@ccsb.com
Envelope ID: 98277250
Filing Code Description: Other Brief
Filing Description: Appellant's Reply Brief
Status as of 3/10/2025 4:46 PM CST

Associated Case Party: Aspire Power Ventures, LP

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Chrysta L.Castaneda | | chrysta@castaneda-firm.com | 3/10/2025 3:54:00 PM | SENT |
| Nicole Michael | | nicole@castaneda-firm.com | 3/10/2025 3:54:00 PM | SENT |
| Monica Latin | | mlatin@ccsb.com | 3/10/2025 3:54:00 PM | SENT |
| Brent M.Rubin | | brubin@ccsb.com | 3/10/2025 3:54:00 PM | SENT |
| Ken Carroll | | kcarroll@ccsb.com | 3/10/2025 3:54:00 PM | SENT |

Associated Case Party: Public Utility Commission of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Hulme | | John.Hulme@oag.texas.gov | 3/10/2025 3:54:00 PM | SENT |
| Amanda AtkinsonCagle | | Amanda.Cagle@oag.texas.gov | 3/10/2025 3:54:00 PM | SENT |
| Jordan Pratt | | Jordan.Pratt@oag.texas.gov | 3/10/2025 3:54:00 PM | SENT |

Associated Case Party: Electric Reliability Council of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Elin Isenhower | | eisenhower@winstead.com | 3/10/2025 3:54:00 PM | SENT |
| Elliot Clark | | eclark@winstead.com | 3/10/2025 3:54:00 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David Laurent | | david.laurent@oag.texas.gov | 3/10/2025 3:54:00 PM | SENT |
| Laura Courtney | | laura.courtney@oag.texas.gov | 3/10/2025 3:54:00 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ken Carroll on behalf of Ken Carroll
Bar No. 03888500
kcarroll@ccsb.com
Envelope ID: 98277250
Filing Code Description: Other Brief
Filing Description: Appellant's Reply Brief
Status as of 3/10/2025 4:46 PM CST

Case Contacts

| Laura Courtney | | laura.courtney@oag.texas.gov | 3/10/2025 3:54:00 PM | SENT |
| James ScottMcCarley | | scott.mccarley@oag.texas.gov | 3/10/2025 3:54:00 PM | SENT |